**Bernard ANDERSON, et al.,
Respondents,**

v.

**The CITY OF HOPKINS, et al., Appellants.**

**No. C2–86–899.**

Court of Appeals of Minnesota.

Feb. 10, 1987.

Karla R. Wahl, Karla R. Wahl, P.A., Minneapolis, for respondents.

Jon P. Parrington, John H. Faricy, Jr., Pustorino, Pederson, Tilton & Parrington, Minneapolis, for appellants.

## OPINION

POPOVICH, Chief Judge.

This appeal is from an order denying summary judgment and rejecting appellants' qualified immunity defense. By order dated June 17, 1986, this court initially dismissed this appeal, since an order denying summary judgment is not appealable of right in Minnesota. The Minnesota Supreme Court subsequently declined to determine whether an order denying a sum-

mary judgment motion based on an immunity claim must be appealable, but held this order "ought to be" reviewed by analogy to 28 U.S.C. § 1291. *Anderson v. City of Hopkins,* 393 N.W.2d 363, 364 (Minn.1986). The case was remanded to this court "for consideration of whether [appellants] are immune from suit." *Id.*

Appellant police officers claim the trial court erred in denying summary judgment because appellants are entitled to qualified immunity from respondents' civil rights claims under the objective test in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Under *Harlow,* appellants are entitled to summary judgment if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. We reverse and remand to the trial court for reconsideration of summary judgment on appellants' qualified immunity claim under the *Harlow* objective test.

## FACTS

Sylvia Anderson and Garry Anderson's marriage was dissolved in July 1979. In September 1979, their dissolution judgment and decree was amended to award Sylvia Anderson custody of Paul Steven, born February 2, 1971. Garry Anderson was awarded custody of respondent Cynthia Marie, born March 17, 1966. Both parents were granted liberal visitation rights.

Garry Anderson was in the military service in Germany when he died in August 1982. At the time of his death, respondent Cynthia, then age 16, was in Germany residing with her father and his wife, respondent Ulla Anderson. Paul, then age 11, was also in Germany visiting. Paul notified his mother, Sylvia Anderson, of the death and a funeral was arranged to be held in Minneapolis, Minnesota.

Paul and respondents Cynthia and Ulla Anderson traveled to Minneapolis and stayed with Garry's parents, respondents Bernard and Leona Anderson, in Hopkins. The funeral was scheduled for September 8, 1982 at 1:00 p.m.

On September 7, 1982, Sylvia Anderson petitioned the Hennepin County District Court for a writ of habeas corpus to compel respondents Bernard, Leona and Ulla Anderson to appear on the morning of September 8 with Cynthia and Paul at a hearing regarding Cynthia's custody. In her petition, Sylvia requested custody of Cynthia. She also claimed Ulla, Leona and Bernard were illegally restraining the children's liberty and Ulla Anderson intended to return to Germany with Cynthia, and possibly Paul, after the funeral.

Later that evening, Sylvia Anderson appeared at the Hopkins Police Department and advised appellant Sergeant David Sikorski her children were attending a wake for her ex-husband and planned to leave for Germany the next day, against her wishes. Accompanying Sylvia Anderson was her sister-in-law, Verla Reierson, who related her conversations with the children and their intent to return to Germany. Sylvia Anderson gave appellant Sikorski copies of the dissolution decree and the order amending judgment, indicating that she had been awarded permanent custody of Paul and Garry Anderson was awarded custody of Cynthia. At Sergeant Sikorski's request, Sylvia produced a driver's license establishing her identification.

Appellant Sikorski also talked with Sylvia's lawyer, Steven Lass, who advised appellant of the legal proceedings initiated that day to prevent the children from leaving the country and to award custody of Cynthia to Sylvia Anderson. According to appellant Sikorski, Lass explained Minnesota law provided that upon the death of Garry Anderson, custody of any minor children would revert to Sylvia Anderson.

Sylvia Anderson then advised appellant Sikorski she intended to go to the wake to obtain custody of the children. She requested the Hopkins police to accompany her. After soliciting a promise from Sylvia Anderson not to cause a disruption at the wake, appellant Sikorski indicated he and appellant Officer Bruce Miller would travel to the funeral home, wait outside and, if necessary, the officers would assist her in securing physical custody of the children.

After arriving at the funeral home, the officers waited outside while Sylvia Anderson and her sister-in-law entered. Approximately 10 to 15 minutes later, one of the proprietors of the funeral home came out and asked the officers to assist in ending the disruption which had ensued.

Upon entering, appellants Sikorski and Miller found the wake in a state of general mayhem with several of the parties shouting at each other, the children near the casket crying and respondent Leona Anderson striking Verla Reierson. Appellants Sikorski and Miller calmed the disruption and advised the children they could either go with their mother or to the police station with the officers. When the children refused to leave with their mother, the officers, at Sylvia Anderson's request, asked the children to come to the police station. Appellant Sikorski advised the adults they could attempt to resolve their differences at the police station, remain at the wake, or leave if they chose.

The children were placed in appellant Sikorski's squad car and Ulla Anderson was allowed to accompany the children to the police station. Leona Anderson traveled to the police station in appellant Miller's car.

At the police station, the two factions were placed in different rooms and each talked with their respective attorneys. Appellant Sikorski testified in his deposition he clearly told the adults they were not under arrest and were free to leave any time. Lass, Sylvia Anderson's lawyer, advised that he was drafting a petition for writ of habeas corpus and expected the writ to be signed by a judge and delivered to the police station shortly.

Lass later arrived with the signed writ ordering the children to be brought before the court at 9:30 the following morning. Appellant Sikorski advised all concerned they could either reach an agreement regarding overnight custody, or the children would stay at a juvenile detention center. An agreement was reached and the chil-

dren left with respondents Ulla, Leona and Bernard Anderson.

At the hearing, the judge apologized to the Andersons and advised it was not the court's intent the writ be served upon them in the fashion that occurred. In its September 10, 1982 order, the court appointed a guardian ad litem to represent the children and granted Ulla Anderson temporary custody of Cynthia and Sylvia Anderson temporary custody of Paul. On November 12, 1982, the court ordered the temporary arrangement made permanent and allowed respondent grandparents liberal visitation rights.

Respondents initially brought constitutional and state law claims against only the City of Hopkins in federal district court. The City of Hopkins then brought a motion for summary judgment. Without issuing findings or a written memorandum, the federal court granted summary judgment only upon respondents' 42 U.S.C. § 1983 claim against the city and dismissed the state law claims without prejudice.

Respondents then brought this action in Hennepin County District Court against the individual police officers and the city. Respondents claim the individual police officers violated their constitutional rights in contravention of 42 U.S.C. § 1983. Respondents also brought state law claims against the city and individual officers for abuse of process and intentional infliction of emotional distress.[1]

Appellants brought two motions for summary judgment. On November 28, 1984, the trial court denied appellants' first motion, in all respects, finding fact issues precluded summary judgment. In its memorandum, the court analyzed respondents' immunity under Minn.Stat. § 466.03, subd. 6 (1984), providing municipal immunity for discretionary functions. The court reasoned respondents raised a "factual question as to whether or not the police had any

discretionary function in serving a writ of habeas corpus."

Following completion of discovery, appellants renewed their motion for summary judgment. On March 18, 1986, the second trial court denied appellants' renewed motion. The court found that, although the actual deposition testimony varied from the facts represented in respondents' original memorandum in opposition to summary judgment, the discrepancies were not sufficient to warrant judgment for appellants as a matter of law. The court stated it was unnecessary to reconsider the arguments raised and adjudicated in the previous summary judgment motion. After remand by the supreme court, this court by order dated September 22, 1986 reinstated this appeal from the March 18, 1986 trial court order.

## ISSUE

Did the trial court err in failing to apply an objective standard to appellants' claim of qualified immunity pursuant to *Harlow v. Fitzgerald?*

## ANALYSIS

1. Qualified, or good faith, immunity sought by appellants initially required satisfaction of a two-part test consisting of objective and subjective elements. *See Wood v. Strickland,* 420 U.S. 308, 321, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). Immunity then did not exist if an individual either (1) knew or reasonably should have known his actions would violate constitutional rights or (2) his actions were taken with the malicious intention to deprive another of those rights. *Id.* at 322, 95 S.Ct. at 1000.

The United States Supreme Court subsequently found the subjective component regarding malicious intention "frequently has proved incompatible with our admonition in *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), that insubstan-

---

**1.** Appellants request this court also review the denial of summary judgment on the state law claims for abuse of process and intentional infliction of emotional distress. We are limited

on remand, however, to review of the trial court ruling on respondents' civil rights claims under 42 U.S.C. § 1983 against appellant police officers. *Anderson,* 393 N.W.2d at 364.

tial claims should not proceed to trial." *Harlow v. Fitzgerald,* 457 U.S. 800, 815–16, 102 S.Ct. 2727, 2736–37, 73 L.Ed.2d 396 (1982). Subjective good faith is a factual question which "may entail broadranging discovery and the deposing of numerous persons." *Id.* at 817, 102 S.Ct. at 2737. Such inquiries "can be peculiarly disruptive of effective government." *Id.* These considerations convinced the *Harlow* Court to eliminate the subjective aspect of qualified immunity.

The *Harlow* Court established an essentially objective test, stating:

[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their *conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.*

*Id.* at 818, 102 S.Ct. at 2738 (emphasis added).

Whether an official's conduct comports with the *Harlow* objective test is generally a question of law which may be resolved by summary judgment.

On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. * * * [I]f the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors.

*Id.* at 818–19, 102 S.Ct. at 2738.

In *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Court stated the appropriate standard for appellate review:

An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. All it need determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, in cases where the district court has denied summary judgment for the defendant on the ground that even under the defendant's version of the facts the defendant's conduct violated clearly established law, whether the law clearly proscribed the actions the defendant claims he took.

*Id.* at 528, 105 S.Ct. at 2816 (footnote omitted).

2. Respondents claim appellants violated clearly established law under (1) article I, sections two and seven of the Minnesota Constitution, (2) the fourth and fourteenth amendments of the United States Constitution prohibiting unreasonable search and seizure, (3) the sixth and fourteenth amendments entitling respondents to be informed of all accusations against them, and (4) the fourteenth amendment prohibiting deprivation of liberty without due process and providing equal protection of laws. Respondents also argue for the first time on appeal that appellants interfered with their right to perform a religious ceremony as secured by the first amendment and by Minnesota Statute. *See* Minn.Stat. § 609.-28 (1984) (misdemeanor when one intentionally prevents another from performing any lawful religious act).

In applying *Harlow* to determine whether police officers violated clearly established law, the United States Supreme Court recently required a police officer's conduct be objectively reasonable. *See Malley v. Briggs,* —— U.S. ——, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). The claimants there alleged police had violated their fourth and fourteenth amendment rights in applying for warrants for their arrest. Criminal charges against the claimants were dismissed when the grand jury did not return an indictment. The trial court, in directing a verdict for the police officers, found that the magistrate's act of issuing arrest warrants broke any causal chain between the officers' filing of a complaint and the arrests. The court of appeals reversed, holding an officer seeking a war-

rant is not entitled to qualified immunity unless the officer has an objectively reasonable basis for believing that the facts alleged in the affidavit are sufficient to establish probable cause.

The Supreme Court affirmed and remanded for determination of whether the officers' application for the warrant was objectively reasonable. The Court noted that the issue is whether:

> [O]n an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Id.* at ——, 106 S.Ct. at 1096. The Court also stated:

> As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law.

*Id.*

3. Thus, appellants claim, and we agree, the question raised by their motion for summary judgment is whether, under the circumstances, any reasonably competent police officer would conclude there was a reasonable basis to accompany Sylvia Anderson, intervene at the funeral home and ask the two minor children to come to the police station.

The trial court, however, in denying both summary judgment motions made no reference to the *Harlow* objective standard when analyzing appellants' claim for immunity. In its March 18, 1986 order denying summary judgment, the court reviewed respondent's deposition testimony available after further discovery and concluded the discrepancies from the facts initially set forth in respondents' memorandum in opposition to appellants' first summary judgment motion did not entitle appellants to summary judgment as a matter of law.

Because the trial court did not address the reasonableness of appellants' conduct under the *Harlow* objective test, we remand for reconsideration of the question. The trial court is more familiar with the record and is better situated to make any necessary findings.

## DECISION

The trial court erred in failing to apply the *Harlow* objective test in analyzing appellants' qualified immunity defense. Accordingly, we reverse and remand for further proceedings.

Reversed and remanded.