**MENDOTA HEIGHTS ASSOCIATES, et al., Appellants,**

v.

**Bernard P. FRIEL, et al., James P. Losleben, et al., Respondents.**

No. C5-87-1152.

Court of Appeals of Minnesota.

Oct. 27, 1987.

Frank J. Walz, Best & Flanagan, Minneapolis, for appellants.

John M. Anderson, Charles E. Lundberg, Bassford, Heckt, Lockhart & Mullin, P.A., R. Scott Davies, Briggs and Morgan, Minneapolis, for respondents.

Heard, considered and decided by FORSBERG, P.J., and LANSING and NIERENGARTEN, JJ.

## OPINION

FORSBERG, Judge.

Respondents, residents of the City of Mendota Heights, sued the City of Mendota Heights to invalidate preliminary approval of appellants' building project. Respondents refused to allow appellants to intervene, and dismissed the suit one day before appellants' motion to intervene was to be heard. Appellants then sued respondents alleging malicious prosecution and tortious interference. Respondents counterclaimed, alleging intentional infliction of mental distress and seeking fees and costs under Minn.Stat. § 549.21 (1984). The trial court eventually granted respondents' motion for summary judgment, and granted appellants' motion to dismiss respondents' counterclaims on the pleadings. Both parties appeal. We affirm.

## FACTS

Appellants own about 120 acres of undeveloped land in the City of Mendota Heights ("the City"). In the spring of 1985, appellants proposed to build 592 apartment units in four phases on 70 acres of its land in the City. Appellants' proposal set in motion the following chain of events.

### Zoning

Appellants requested that the City amend its Comprehensive Plan to permit high-density development, and to correspondingly rezone the property from single family to multiple family residential.

On October 1, 1985, the city council met and approved an amendment to the Comprehensive Plan. At the same time, the council gave "concept approval to [appellants'] proposal, and direct[ed] staff to prepare a proposed planned unit development agreement and a draft ordinance amendment or zoning change * * *." Only three of the five council members voted for rezoning.

The ⅗ vote concerned city administrator Kevin Frazell, who wrote that "[s]ince, by City ordinance and State statute [Mend. Hts.Ord. § 5.8(1) and Minn.Stat. § 462.357], rezonings must be by a ⅘'s vote, it appears that Council would not be able to adopt the rezoning ordinance when it is presented. * * * We could be faced with a Comprehensive Plan designating a particular land use, but then reject a rezoning for a project basically consistent with the Plan."

### Bond Issue

On September 17, 1985, appellants requested a public hearing on their application for four housing revenue bond issues of $10 million each. The council passed four separate resolutions, calling for a public hearing on each application to take place on October 15, 1985. The council eventually gave preliminary approval to one $10 million bond issue.

There was concern over the tax characterization of this bond issue. The City requested and received an opinion on this and other issues from attorney Roger D. Gordon. Gordon stated that "[a]bsent an unconditional statement of intent to vote for rezoning by at least four members of the City Council, it cannot be stated with the requisite certainty that the necessary rezoning will be granted within the immediate future."

Generally, the interest on the bonds issued by a city is not included in gross income, except when the bonds qualify as "arbitrage" bonds. I.R.C. §§ 103(a), 103(c)(1), (2) (1985). Gordon stated that because "it would not appear that the City would have the requisite 'reasonable expectations' that the project will in fact be built * * * it is at least possible that the subject bonds could be found to be 'arbitrage bonds' * * *."

### Metro Council

Under state law, the City was required to submit appellants' proposal to the Metropolitan Council for review and comment. Minn.Stat. § 462C.04, subd. 2 (Supp.1985). The statute requires that the City shall give notice and hold a public hearing on the proposal, and that

> Any comment submitted by the reviewing agency to the city must be presented to the body considering the proposed program at the public hearing held on the program.

Minn.Stat. § 462C.04, subd. 2 (Supp.1985). Finally, the statute requires that the proposal considered by the City shall not contain any material changes from the program submitted to the Metropolitan Council. Any materially altered proposal must be resubmitted and may not be adopted until the City obtains a new comment and holds another public hearing.

The City submitted the proposed housing program to the Metropolitan Council on September 25, 1985. The Metropolitan Council responded on October 10, 1985, in a letter stating that:

> Council staff has reviewed the information provided and finds no inconsistencies between the proposed program and the city's housing bond plan or policies of the Metropolitan Development Guide. The bond program does, however, propose a land use different from that currently indicated in the city's comprehensive plan for the site in question. Therefore, the city should amend its comprehensive plan to reflect this change of land use and revise its sewer plan to include this area in its pre–1990 sewered area.

However, the council added that

> *we can only consider our findings of no inconsistencies with Council policy to be preliminary to those of an EAW review.*

(Emphasis added.)

The council discussed the Metropolitan Council response on November 5, 1985, 20

days after the council presented the bond proposal to the public. A transcript of portions of the November 5 meeting reveals that the Metropolitan Council comment was not presented to the public when the City originally held hearings on the proposal on October 15, 1985.

Also at the November 5 meeting, the council discussed a compromise offered by appellants. That proposal included 300 units based on $20 million in bond financing, rather than the original 590 units based on $40 million. The minutes do not disclose whether or not this proposal had been submitted to the Metropolitan Council. Respondent Friel, present at the meeting, called attention to Minn.Stat. § 462C.04 which requires that the council resubmit materially altered proposals to the Metropolitan Council, and await their response before acting further. Friel felt that a change from 590 to 300 units was material under the statute, and that he was "informed preliminarily by the Metropolitan Council" that this was indeed the case. Appellants question this assertion.

Gordon addressed the material change issue in his opinion letter. Gordon stated that "it would appear that the City has adequately complied with the requirements of Section 462C.04, Subdivision 2." However, he added that "[t]he determination of whether a proposed change * * * is a 'material change,' requiring resubmission and requiring a second public hearing, should be made by the Metropolitan Council." Gordon recommended that the City obtain written confirmation that the reduction of units was not a material change. There is no evidence that the City obtained such confirmation.

### First Action

Respondents sued the City on December 4, 1985, to invalidate preliminary approval of the bond issue and to enjoin the City from proceeding without complying with state law. On January 7, 1986, the council acknowledged that the bond underwriters withdrew because of respondents' suit. Appellants then withdrew their application for bond approval. Respondents voluntar-

ily dismissed their suit against the City on February 17, 1986. Appellants thereafter sued respondents for malicious prosecution and tortious interference.

Appellants argue that respondents concocted a lawsuit against the City knowing that the underwriters of financing vital to appellants' proposal would then back out. Lacking financing, and the time to settle the suit before year end, appellants were forced to scrap the project. Respondents then dismissed the suit without having to test its merits.

### ISSUES

1. Did the trial court properly grant summary judgment?

2. Did the trial court correctly rule that facts established by respondents support the legal conclusion that respondents had probable cause to sue the City, thus negating essential elements of appellants' claims?

3. Did the trial court correctly dismiss respondents' counterclaim of bad faith litigation and intentional infliction of mental distress on the pleadings alone?

### ANALYSIS

On review of summary judgment, the court must first determine whether there are genuine issues of fact, and then whether the trial court correctly applied the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). The court must view the evidence in the light most favorable to the party who lost the motion below. *Hauser v. Mealey,* 263 N.W.2d 803, 805 n. 1 (Minn.1978).

### I.

The party moving for summary judgment has the burden of proving that no genuine issue of material fact exist. *Nord v. Herreid,* 305 N.W.2d 337, 339 (Minn. 1981). When the moving party produces evidence to support the motion, the adverse party may not rest upon his pleadings but must present specific facts showing that there is a genuine issue for trial. Minn.R. Civ.P. 56.05. Analysis of the material submitted by the parties shows that respondents established indisputable facts that

supported the conclusion of the trial court, and that the trial court properly granted summary judgment.

## II.

■ A. "Probable cause for pursuing a civil action consists of such facts and circumstances as will warrant a cautious, reasonable and prudent person in the honest belief that his action and the means taken in prosecution of it are just, legal, and proper." *First National Bank of Omaha v. Marquette National Bank of Minneapolis,* 482 F.Supp. 514, 523 (D.Minn.1979), *aff'd,* 636 F.2d 195 (8th Cir.1980), *cert. denied,* 450 U.S. 1042, 101 S.Ct. 1761, 68 L.Ed.2d 240 (1981). "It is for the court to declare the ultimate conclusion, as to whether facts, either admitted or established by proof, are sufficient to show want of probable cause." *Eastman v. The Leiser Co.,* 148 Minn. 96, 102, 181 N.W. 109, 112 (1921). The plaintiff must prove both malice and want of probable cause, and the want of probable cause must be very palpable. *Virtue v. Creamery Package Manaufacturing Co.,* 123 Minn. 17, 33, 142 N.W. 930, 936 (1913); *Eickhoff v. Fidelity & Casualty Co.,* 74 Minn. 139, 142, 76 N.W. 1030, 1031 (1898).

■ The city council minutes disclose the following undisputed facts:

1) The council voted 3–2 to amend its comprehensive plan, but lacked the votes to rezone the property accordingly.

2) Lack of votes necessary for rezoning cast doubt on the favorable characterization of the bonds under IRS Code and Regulations.

3) The council did not consider, nor did it present the comments of the Metropolitan Council to the public at the public hearing on the bond issue as required by Minn.Stat. 462C.04, subd. 2.

4) The council never obtained a ruling by the Metropolitan Council regarding whether the planned decrease in the number of proposed units was a material change.

Appellants strenuously attempt to create disputes concerning these points. They argue that council members were aware of the Metropolitan Council comments at the time of the public hearing, and that even if they had been unaware, the comment would not have changed the council's action. This assertion is flatly contradicted by the minutes of the meeting, and ignores the fact that by law the comment must be presented to the public, regardless of what the council would or would not have done.

Appellants argue that the reduction of units did not constitute a material change which would require resubmission to the Metropolitan Council. Appellants cite the opinion letter which noted that the City received *verbal* assurance from the Metropolitan Council that the reduction was not a material change. However, the same attorney recommended that the question be officially submitted to receive *written* confirmation of that fact. This was never done.

These undisputed facts show as a matter of law that a reasonable person in respondents' position could honestly believe a lawsuit was just and proper. The fact that the council proceeded in violation of state law on the bond issue alone shows probable cause to sue. Because respondents adequately demonstrated serious procedural defects in the application and uncertainty as to tax consequences, the trial court correctly found that probable cause existed and correctly dismissed the malicious prosecution claim.

■ B. Minnesota law and leading commentators support the position that commencement of a bona fide lawsuit is a valid justification for interference of business expectancy. "[I]t is an actionable wrong to directly or indirectly interfere with or disturb another in his business without lawful cause or justification * * *." *Emery v. Hotel and Restaurant Employees Union,* 281 Minn. 334, 350, 161 N.W.2d 842, 852 (1968) (quoting *Dinoffria v. International Teamsters Union,* 331 Ill.App. 129, 72 N.E.2d 635 (1947)), *cert. denied,* 394 U.S. 455, 89 S.Ct. 1222, 22 L.Ed.2d 413 (1969). The exercise of the right to bring a bona fide lawsuit will justify interference with relations which are merely prospective. *Prosser and Keeton on The Law of Torts* 1010–11 (5th ed. 1984).

Whether or not a lawsuit is "bona fide" logically depends on whether probable

cause existed to bring the suit. Thus, the trial court incorrectly stated that probable cause is not an element of tortious interference, and the court incorrectly denied respondents' motion for summary judgment on that basis.[1] The existence of probable cause to sue is a good defense to a claim for tortious interference with business expectancy.

### III.

In reviewing cases dismissed for failure to state a claim, the only question before this court is whether the complaint sets forth a legally sufficient claim for relief. *Elzie v. Commissioner of Public Safety*, 298 N.W.2d 29, 32 (Minn.1980). A claim is legally sufficient "if it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist which would support granting the relief demanded." *Id.* (quoting *Northern States Power Co. v. Franklin*, 265 Minn. 391, 395, 122 N.W.2d 26, 29 (1963)).

Respondents allege harassment and intentional infliction of mental distress based on appellants' "systematic and intentional course of action calculated to intimidate, harass, and prevent defendants from expressing their legitimate and constitutionally protected views * * *."

This complaint does not set forth legally a sufficient claim because appellants cannot produce facts consistent with the pleading which would support the claim. The record shows that appellants withdrew the proposal from consideration and that the city council has terminated further discussion of that proposal. Respondents have already expressed their "constitutionally protected views" and have no reason to express them again. Therefore, it is inconceivable that appellants' lawsuit is the cause of the injury alleged. The trial court correctly dismissed respondents' counterclaim for failure to state a claim.

### DECISION

The judgments dismissing all claims are affirmed.

---

1. The trial court eventually dismissed the tortious interference claim relying on *First National Bank of Omaha*, 482 F.Supp. at 514. In that case, the court held that the defendants' activity was protected under the first amendment privilege of petitioning a government body. The court implicitly found that because the defendants had probable cause to institute a suit to enjoin certain activities of the plaintiff, the defendants' activity did not fall within the "sham exception" to the first amendment protection. The trial court in this case reasoned that its finding of probable cause to sue insulated respondents from tortious interference in the same manner.