**Marcie McINTIRE, Respondent,**

v.

**The STATE of Minnesota, et al., Appellants.**

**No. C7-87-1556.**

Court of Appeals of Minnesota.

Feb. 23, 1988.

Review Denied April 20, 1988.

Stephen C. Fiebiger, Fiebiger & Flaim, Minneapolis, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Jean Boler, Mark Levinger, Sp. Asst. Attys. Gen., St. Paul, for appellants.

Heard, considered and decided by WOZNIAK, C.J., and PARKER and SCHUMACHER, JJ.

## OPINION

PARKER, Judge.

 Appellants, three government officials, seek review of an order denying their motion for summary judgment. They claim the trial court should have held that they have qualified immunity from suit on respondent's first amendment claims. This court has jurisdiction to review an order denying a motion to dismiss a governmental official from a lawsuit when the basis of the motion is immunity from suit. *See Anderson v. City of Hopkins*, 393 N.W.2d 363, 363–64 (Minn.1986). We reverse and remand.

## FACTS

In July 1984 appellant Minnesota Housing Finance Agency hired respondent Marcie McIntire, an American Indian, as the Indian Housing Coordinator for its home mortgage division. Her duties were to oversee the administration of funds to several Indian housing programs and to act as the agency's representative to the administrators of those programs and the Indian communities they serve. One such program was the St. Paul Intertribal Housing Board (board). McIntire's supervisor, appellant Michael Haley, had ultimate responsibility for approving program budgets, including the board's budget.

In the spring of 1984, before McIntire was hired, the agency investigated reports that the board had been misusing agency funds through unauthorized loans and salary increases. When McIntire was hired in July, she was informed of these problems

and that measures were being taken to correct them.

In August and September 1984 McIntire made several public statements which her supervisors viewed as inappropriate. At a tribal meeting she indicated that the state auditor had a conflict of interest in auditing one of the Indian programs. At a public meeting with the Urban Indian Advisory Council McIntire implied that board members were sophisticated embezzlers. McIntire also contradicted her supervisor at a Housing Finance Agency Board meeting.

On December 7, 1984, Haley, the director of the agency's home mortgage program, opened an outgoing envelope addressed to "Senate Council." In it was a nine-page memorandum addressed to Haley from McIntire. The memo was dated December 4, 1984, but Haley had not previously seen it. The memo outlined in detail how expenditures by the board had exceeded their approved budget and stated that McIntire opposed continued funding to the board.

Upon reading the memo, Haley directed McIntire not to distribute the memo. Despite his order and without informing Haley of her action, McIntire mailed copies of the memo to six individuals outside the agency, including a union representative and members of the Indian community.

Because of McIntire's public statements, but without knowledge that she had mailed the December 4 memo, the agency decided to extend McIntire's probationary period rather than certify her for permanent employment. By memoranda dated January 10 and 14, 1985, the agency notified McIntire how her conduct should be corrected in order for her to be certified for permanent employment.

Haley received calls from members of the Indian community in January 1985 who told him that McIntire's December 4 memo had been "widely distributed" in the Indian community. The agency determined that McIntire had been insubordinate and that the working relationship had completely broken down. On February 15, 1985, McIntire was discharged from the agency.

McIntire sued the State of Minnesota, the Housing Finance Agency, agency exec-utive director James Solem, agency personnel director Henry Wesley, and Haley. Solem, Wesley and Haley moved the trial court for summary judgment dismissing McIntire's claims based on qualified immunity from suit. The trial court denied the motion without specifically addressing the claim of qualified immunity, reasoning that there were "a myriad of unresolved questions surrounding [McIntire's] employment and dismissal."

## ISSUE

Did the trial court err in failing to apply an objective standard to appellants' claim of qualified immunity pursuant to *Harlow v. Fitzgerald?*

## DISCUSSION

■ Under the standard set forth in *Harlow v. Fitzgerald,*

> government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Id.,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

> The rationale of the defense is that public officials with a broad range of duties and responsibilities must be able to execute those responsibilities without undue risk of civil liability.

*Finch v. Wemlinger,* 361 N.W.2d 865, 868 (Minn.1985).

In *Harlow* the Supreme Court further explained the applicable test:

> If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors.

*Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738. Whether the law was clearly established is a threshold question; if the trial court finds the law was not clearly established when the conduct occurred, "the inquiry ceases" and "the official is entitled to summary judgment as a matter of law." *Finch,* 361 N.W.2d at 868.

The scope of the qualified immunity doctrine is broad:

> As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law.

*Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

■ Because McIntire claims that appellants violated her first amendment free speech rights, the trial court must balance

> the interests of the [employee], as a citizen, in commenting on matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

*See Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968). The trial court must carefully consider the facts surrounding McIntire's claimed right to free speech in this case. McIntire did not use internal communication channels to relate a perceived problem, but instead attempted to distribute a memo addressed to her supervisor without first showing it to him. After her supervisor specifically directed that she not distribute the memo, McIntire defied his order, publicly distributed it and concealed her distribution of it.

■ McIntire essentially claims that she had a "clearly established" constitutional right to violate her supervisor's specific order and distribute an intra-agency memo addressed but not sent to him. In a public employee firing context, the test to determine whether an employee's speech is protected is (1) whether it addresses a matter of public concern, and (2) whether the state's interests articulated in *Pickering* outweigh the employee's interests. *See Lewis v. Harrison School District 1,* 805 F.2d 310, 313 (8th Cir.1986), *cert. denied,*

—— U.S. ——, 107 S.Ct. 2481, 96 L.Ed.2d 374 (1987). The following facts must be considered in applying this test: the information contained in the memo had previously been brought to the attention of the legislative auditor who was conducting detailed audits of the board; several days *before* distribution of the memo, the legislative auditor issued its report on the board, confirming funding abuses; and the Housing Finance Agency cut off the board's funding *before* McIntire distributed her memo.

The trial court should balance the interest of the agency, in promoting the efficiency of the public services it performs through its employees, against any right McIntire may have had to take action in the specific factual setting here. Factors bearing on the smooth operation of the workplace—such as the maintenance of discipline by immediate supervisors, harmony among co-workers, and the existence of a close working relationship between supervisor and subordinate calling for trust, confidence and loyalty—should be considered. *See Finch,* 361 N.W.2d at 870. The "exact parameters of the free speech rights of public employees" must also be clearly established. *See id.* at 871.

The trial court found the issues here were "not appropriately resolved by summary judgment motion." We have stated, however, that a determination of whether an official's conduct falls within the scope of the immunity outlined by the objective *Harlow* test is "generally a question of law which may be resolved by summary judgment." *Anderson v. City of Hopkins,* 400 N.W.2d 350, 354 (Minn.Ct.App.1987).

Failure to apply the *Harlow* standard requires a remand for proper consideration of it. *Id.* at 355. The trial court denied appellants' claim of immunity and made no reference to the *Harlow* standard in its analysis. Because the trial court is "more familiar with the record and is better situated to make any necessary findings," it must apply the *Harlow* standard before this court can review the decision. *See id.*

## DECISION

We reverse and remand this case to the trial court for application of the objective *Harlow* test in analyzing appellants' claim of qualified immunity.

Reversed and remanded.