**Robert Reed CARRADINE, Respondent,**

v.

**STATE of Minnesota, et al., Appellants.**

No. C5–92–1070.

Court of Appeals of Minnesota.

Dec. 29, 1992.

Review Granted in Part, Denied in Part Feb. 23, 1993.

Peter H. Grills, O'Neill, Burke, O'Neill, Leonard & O'Brien, Ltd., St. Paul, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Peter M. Ackerberg, Jacquelyn E. Albright, Sp. Asst. Attys. Gen., St. Paul, for appellants.

Considered and decided by HUSPENI, P.J., and SHORT, and PETERSON, JJ.

## OPINION

SHORT, Judge.

This civil case arises out of the arrest and subsequent incarceration of Robert Reed Carradine. Carradine sued state trooper Patrick Chase (officer) and the State of Minnesota claiming unreasonable search and seizure, deprivation of personal freedom and liberty without due process of law, assault, battery, false imprisonment, excessive use of force, negligent infliction of emotional distress, defamation, malicious prosecution, negligence, trespass to personal property, conversion, and vicarious liability. The officer and the state moved for summary judgment on the basis of official, absolute, sovereign, and qualified immunity. The trial court granted summary judgment in favor of the officer and the state on all of Carradine's claims, except negligent infliction of emotional distress, defamation and vicarious liability. On appeal, all parties argue the trial court erred as a matter of law. We affirm.

## FACTS

The officer arrested Carradine on July 9, 1987, while he was driving to Minneapolis/St. Paul International Airport to catch an early morning airplane flight. The officer prepared an arrest report describing Carradine's conduct to include speeding, reckless driving, fleeing an officer, and impersonating an officer. Carradine and his travel companion dispute the officer's version of the events.

Following his arrest, the officer transported Carradine to the Hennepin County Adult Detention Center where Carradine was booked, fingerprinted and strip-searched. The officer was not involved in the booking process or in the strip-search. After approximately ten hours in custody, Carradine was released on his own recognizance. When contacted by a local reporter, the officer orally recounted the events described in the arrest report. Based on the officer's statements to the reporter, accounts of Carradine's arrest appeared in numerous national newspaper articles and wire reports, and one account was reported on a television show.

Carradine was charged with: (a) fleeing a police officer in a motor vehicle, in violation of Minn.Stat. § 609.487, subd. 3 (1986), a gross misdemeanor; (b) reckless driving, in violation of Minn.Stat. § 169.13, subd. 1 (1986), a misdemeanor; and (c) careless driving, in violation of Minn.Stat. § 169.13, subd. 2 (1986), a misdemeanor. Pursuant to a plea agreement, Carradine admitted driving over the posted speed limit and pleaded guilty to a petty misdemeanor charge of speeding. At the conclusion of the criminal proceedings, Carradine began this civil lawsuit against the officer and the state. Carradine alleges the officer made defamatory statements about his conduct in the arrest report, to law enforcement officials, to prosecuting authorities and to the news media.

## ISSUES

I. Is the doctrine of official immunity applicable either to an officer's writing of an arrest report or to a subsequent oral account of the arrest?

II. Does the doctrine of sovereign immunity bar Carradine's vicarious liability claim based on defamation and negligent infliction of emotional distress?

III. Is the officer's stop, arrest and search of Carradine protected by qualified immunity?

## ANALYSIS

On appeal from a grant of summary judgment, we must determine whether any genuine issues of material fact exist and whether the trial court erred in applying the law. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989). We need not defer to a trial court's decision on legal issues. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

■ Whether the doctrines of official immunity and sovereign immunity apply to the facts requires us to focus on the nature of the officer's particular acts in question. *Johnson v. Morris*, 453 N.W.2d 31, 42 (Minn.1990); *see Nusbaum v. County of Blue Earth*, 422 N.W.2d 713, 719 (Minn. 1988) ("each case must be judged in a fashion which focuses on whether the legislature intended to immunize the particular government activity"). The determination of whether an officer's actions were malicious or willful is generally a fact question to be decided by a jury, but may be resolved by summary judgment. *See Elwood v. County of Rice*, 423 N.W.2d 671, 679 (Minn.1988) (recognizing application of the doctrines may involve a fact question for the jury, but not finding such a question in the case before it). Whether the officer's actions were discretionary or ministerial is a question of law. *Engle v. Hennepin County*, 412 N.W.2d 364, 366 (Minn.App. 1987), *pet. for rev. denied* (Minn. Nov. 18, 1987).

■ A determination of whether an official's conduct falls within the scope of immunity outlined by the objective qualified immunity test generally is a question of law which may be resolved by summary judgment. *Anderson v. City of Hopkins*, 400 N.W.2d 350, 354 (Minn.App.1987). An appellate court reviewing a claim of qualified immunity "need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985)). "All [the reviewing court] need determine is a question of law: whether the legal norms allegedly violated by [the officer] were clearly established at the time of the challenged actions or, in cases where the district court has denied summary judgment for the [officer] * * * whether the law clearly proscribed the actions the [officer] claims he took." *Id.* (quoting *Mitchell*, 472 U.S. at 528, 105 S.Ct. at 2816).

### I.

■ Minnesota's official immunity doctrine protects from personal liability a public official charged by law with duties calling for the exercise of judgment or discretion, unless the official is guilty of a willful or malicious wrong. *Elwood*, 423 N.W.2d at 677. The purpose behind the official immunity doctrine is "to insure that the threat of potential liability does not unduly inhibit the exercise of discretion required of public officers in the discharge of their duties." *Rico v. State*, 472 N.W.2d 100, 107 (Minn.1991) (quoting *Holmquist v. State*, 425 N.W.2d 230, 233 n. 1 (Minn. 1988)). Official immunity, however, does not protect an officer who willfully violates a known right. *Id.* Generally, police officers exercising their official duties are classified as "discretionary" rather than "ministerial" officers and thus are afforded official immunity in executing those duties. *Johnson*, 453 N.W.2d at 42; *Elwood*, 423 N.W.2d at 678. In this case, the officer seeks immunity for his decision to detail the events surrounding Carradine's arrest

in an arrest report and in oral communications to detention officers and a reporter.

■ The state and the officer argue the doctrine of official immunity protects the officer from Carradine's claims. We disagree. It is undisputed a law enforcement officer has an absolute duty to report accurately the circumstances underlying an arrest. *See* Minn.R.Crim.P. 4.02, subd. 3 (officer shall notify prosecuting attorney of the arrest); State Patrol Gen. Order No. PR 83–90–007 (July 1, 1983) (establishing a uniform incident reporting system). Carradine alleges the officer: (a) fabricated the circumstances leading to the arrest; (b) intentionally misrepresented the events surrounding the arrest in the police report; and (c) embellished the events in talking with a reporter. The testimony of Carradine, his traveling companion and a reconstruction expert support Carradine's allegations and create a genuine issue for trial on whether the officer is guilty of a willful wrong. Under these circumstances, the officer is not entitled to summary judgment on the basis of official immunity.

■ The state and officer also argue the officer is absolutely privileged to publish the arrest report, regardless of its content, because the report is a public document under Minn.Stat. § 13.82, subds. 2(c), 3, 4(f), 16 (1986) and the Minnesota Supreme Court's holding in *Johnson v. Dirkswager,* 315 N.W.2d 215, 223 (1982). We disagree. First, the court's finding of an absolute privilege in *Dirkswager* was predicated on Dirkswager's status as a top-level cabinet-equivalent official of the executive branch. *Id.* at 220–23. The arresting officer here was not a cabinet-level policy-making official; he was an entry-level state trooper. *Dirkswager's* rationale does not extend to low-level law enforcement officers. Second, we are not convinced extending an absolute privilege to low-level law enforcement officers would promote the public good because such an extension would: (a) undercut *Dirkswager's* limited exception to Minnesota's official immunity doctrine; and (b) eliminate an incentive to be accurate. *See id.* at 220 (purpose of the absolute privilege is not to protect public offi-

cials, but to promote the public good). And third, the Government Data Practices Act does not specifically protect government employees from liability for making defamatory statements in reports required by law. *See* Minn.Stat. ch. 13 (1986) (Minnesota Government Data Practices Act), §§ 645.16, .17(5) (1986) (the object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature; legislature intends to favor the public interest as against any private interest). Under these circumstances, the officer is not entitled to an absolute privilege to publish the arrest report's contents.

■ Recovery for negligent infliction of emotional distress is allowed where there is a direct invasion of a person's rights, such as defamation, malicious prosecution, or other willful or malicious conduct. *Langeland v. Farmers State Bank of Trimont,* 319 N.W.2d 26, 31 (Minn.1982). Because the officer is not entitled to summary judgment on the basis of official immunity as to Carradine's defamation claim, the trial court properly denied summary judgment on Carradine's claim for negligent infliction of emotional distress.

## II.

■ The state is liable for the torts of its employees acting within the scope of their employment if a private person would be liable under the same circumstances. Minn.Stat. § 3.736, subd. 1 (1986). A narrow exception to this general rule precludes government liability for a loss caused by a state employee's performance of or failure to perform a discretionary duty, whether or not the discretion is abused. Minn.Stat. § 3.736, subd. 3(b) (1986). The underlying purpose of this discretionary act exception is to prevent the use of tort actions to promote judicial interference with policy-making activities that are legislative or executive in nature. *Holmquist,* 425 N.W.2d at 231; *Nusbaum,* 422 N.W.2d at 718.

■ Whether the officer's acts fall within the discretionary act exception involves an inquiry into whether the officer's deci-

sions to complete an arrest report and to make statements to detention officers and a reporter are protected planning-level decisions or unprotected operational-level decisions. *See Nusbaum,* 422 N.W.2d at 719 (the Supreme Court has drawn a distinction between conduct at a planning level, which is protected, and conduct at an operational level, which is unprotected). Planning-level decisions involve the evaluation of factors such as the financial, political, economic, and social effects of a plan or policy. *Holmquist,* 425 N.W.2d at 232. By contrast, operational-level decisions involve decisions relating to the government's ordinary day-to-day operations. *Id.* The focus of the inquiry, then, is on whether the challenged conduct involved

> a balancing of policy with political, economic, and social considerations or, alternatively, whether it involved merely a professional or scientific judgment.

*Nusbaum,* 422 N.W.2d at 720. Another significant consideration is the extent to which the threat of liability would impair the effective performance of governmental functions. *Cairl v. State,* 323 N.W.2d 20, 23 n. 3 (Minn.1982).

■■■ It is undisputed the officer was acting within the scope of his employment in arresting Carradine, preparing the arrest report, and communicating with other law enforcement officials. Since a private person would be liable to Carradine in these circumstances if he proved his allegations, the state has waived its immunity here, unless Carradine's loss was caused by the performance of a discretionary duty. Minn.Stat. § 3.736, subds. 1, 3(b). We conclude the decision to complete an arrest report and communicate with others about the arrest report's contents does not involve a balancing of policy objectives, nor does it constitute the type of decision that should be protected from judicial second-guessing. The officer's actions at issue in this case were ministerial, "involving merely the execution of a specific duty arising from fixed and designated facts." *See Larson v. Independent Sch. Dist. No. 314, Braham,* 289 N.W.2d 112, 119–20 (Minn. 1979) (quoting *Cook v. Trovatten,* 200 Minn. 221, 224, 274 N.W. 165, 167 (1937)).

Under these circumstances, the state is not entitled to summary judgment on Carradine's claim for vicarious liability.

### III.

Government officials performing discretionary functions have qualified immunity shielding them from civil liability as long as their actions reasonably could have been thought to be consistent with the rights they are alleged to have violated. *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Whether an officer protected by qualified immunity may be held personally liable for his or her allegedly unlawful official action "turns on the 'objective legal reasonableness' of the action * * * assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Id.* at 639, 107 S.Ct. at 3038 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396)). The scope of the qualified immunity doctrine is broad. *McIntire v. State,* 419 N.W.2d 799, 802 (Minn.App.1988), *pet. for rev. denied* (Minn. Apr. 20, 1988). If the allegedly violated law is a clearly established one, however, the immunity defense ordinarily will fail, since a reasonably competent public official should know the law governing his or her conduct. *Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738. Carradine argues the trial court erred in granting summary judgment for the officer on Carradine's federal law claims because reasonable officers would have known that the stop, arrest, and search violated Carradine's constitutional rights.

A. The initial stop was not a clear violation of Carradine's constitutional rights.

■■■ Carradine argues the officer had no lawful basis to stop him and a reasonable officer would have known the stop was unlawful. We disagree. The undisputed facts demonstrate the officer was monitoring traffic when he observed a speeding car. The officer had reasonable, acticulable suspicion to stop that car. Even if Carradine were not violating the

traffic laws, the officer could have made a brief investigatory stop, so long as he had an articulable suspicion of a violation. *State v. Johnson*, 257 N.W.2d 308, 309 (Minn.1977). Because the officer had a particularized and objective basis for suspecting a traffic violation, a reasonable officer could have concluded that the stop was valid under the federal and state constitutions. *See United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981) (the officer must have a particularized and objective basis for suspecting the particular person stopped of criminal activity, based upon all the circumstances); *Appelgate v. Commissioner of Pub. Safety*, 402 N.W.2d 106, 108 (Minn. 1987) (a limited investigative stop is lawful if the officer can articulate a particularized and objective basis for suspecting criminal activity).

B. A reasonable officer could have concluded there was probable cause for the arrest.

 Carradine also argues a reasonable officer would have concluded there was insufficient cause to arrest Carradine. We disagree. Minn.R.Crim.P. 6.01, subd. 1(1)(a) provides in part:

Law enforcement officers acting without a warrant * * * shall issue citations to persons subject to lawful arrest for misdemeanors, unless it reasonably appears to the officer that arrest or detention is necessary [because] * * * there is a substantial likelihood that the accused will fail to respond to a citation.

While there are disputed facts relating to the charge of fleeing a police officer in a motor vehicle, there are undisputed facts supporting a custodial arrest under Minn. R.Crim.P. 6.01, subd. 1(1)(a). The record demonstrates: (a) Carradine was traveling to the airport; (b) Carradine and his traveling companion were not Minnesota residents; (c) Carradine presented a California drivers' license; (d) California and Minnesota do not have a reciprocal agreement regarding traffic citations; and (e) Carradine was traveling at a high rate of speed. Under these facts, a reasonably competent law enforcement officer could believe there was a substantial likelihood Carradine would fail to respond to a citation.

 Even if the officer erred in concluding probable cause existed to make a custodial arrest, he still would be entitled to qualified immunity because his decision, even if mistaken, nonetheless was reasonable. The accuracy of the information upon which the officer acts is not material if the officer "reasonably but mistakenly conclude[s] probable cause is present" in light of clearly established law and information the officer possessed. *Hunter v. Bryant*, —— U.S. ——, ——, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (quoting *Anderson*, 483 U.S. at 641, 107 S.Ct. at 3040).

C. The search was incident to the custodial arrest.

 Carradine asserts that because he was arrested without probable cause, he was searched without probable cause in violation of his constitutional rights. We disagree. As noted above, the officer reasonably concluded he had probable cause to arrest Carradine. In the case of a lawful custodial arrest, a full search of the person incident to the arrest not only is an exception to the Fourth Amendment's warrant requirement, but also is a reasonable search under that amendment without a showing of probable cause that weapons or evidence would be found. *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973). The fact of the lawful arrest negates any constitutional requirement the officer be able to articulate any additional justification for a search of the person. *Id.; see generally* 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 5.3(c), at 497–98 (2d ed.1987) (inspections of and intrusions into the body). Carradine failed to show the search of his person was conducted with excessive force or violated any clearly established law. Moreover, the strip-search of Carradine at the detention center is distinguishable from a search incident to an arrest involving the taking of a blood sample or the making of some similar intrusion into the body. *See, e.g., Schmer-*

*ber v. California,* 384 U.S. 757, 769–70, 86 S.Ct. 1826, 1835, 16 L.Ed.2d 908 (1966) (searches involving bodily intrusions require a stricter constitutional test). Under these circumstances, a reasonable officer would conclude the search of Carradine's person did not violate his constitutional rights; thus, qualified immunity shields the officer from civil liability to Carradine for the search and the trial court correctly granted summary judgment in the officer's favor.

### DECISION

The trial court properly denied the motions for summary judgment made by the officer and the state on Carradine's claims of defamation, emotional distress and vicarious liability because: (a) there are facts in dispute regarding the officer's preparation of and communication about the arrest report; (b) the officer is not entitled to an absolute privilege to publish the arrest report's contents; and (c) the officer's decision to complete the arrest report and communicate its contents to others did not involve a balancing of policy objectives. In addition, the trial court correctly granted summary judgment in favor of the officer on Carradine's federal claims because the stop, arrest and search did not violate Carradine's constitutional rights and a reasonable officer would have acted similarly under the circumstances.

Affirmed.

HUSPENI, J., concurs.

HUSPENI, Judge (concurring specially).

The trial court determined that it need not decide the question of

> whether Trooper Chase was absolutely privileged to make allegedly defamatory statements in his arrest report and to disclose the contents of that report to the newspaper reporter because there is evidence in the record that Trooper Chase's statements to the reporter were not in all respects consistent with the contents of the arrest report.

While I concur in the decision of the majority to deny immunity on the claims of defa-

mation and negligent infliction of emotional distress, I would limit the issues at trial to the narrow basis identified by the trial court.

Common law tort claims that find their genesis in challenged arrest reports fall more properly, I believe, within the purview of a malicious prosecution action. To maintain a claim of malicious prosecution, a plaintiff must establish both malice and want of probable cause. *Mendota Heights Assocs. v. Friel,* 414 N.W.2d 480, 484 (Minn.App.1987).

There is an additional element which a plaintiff in a malicious prosecution suit must prove: the criminal proceedings must have been concluded in favor of the accused. *See Survis v. A.Y. McDonald Mfg. Co.,* 224 Minn. 479, 491, 28 N.W.2d 720, 727 (1947).

Carradine pleaded guilty to a charge of speeding in the criminal case out of which the present action arose. This plea may have greatly diminished his prospects of prevailing in a malicious prosecution suit. However, this fact neither weakens my belief that a malicious prosecution suit remains an appropriate method by which to challenge an allegedly incorrect arrest report nor dissuades me from urging that the defamation and negligent infliction of emotional distress issues here be litigated within the parameters set out by the trial court.