ANN J. COOK v. ROLLEF A. TROVATTEN AND ANOTHER.[1]

June 11, 1937.

No. 31,019.

*William W. Pye,* for appellant.

*Davis, Michel, Yaeger & McGinley,* for respondents.

STONE, JUSTICE.

Action against defendant Trovatten, as commissioner of agriculture, and defendant New Amsterdam Casualty Company, as surety on his official bond, wherein the complaint encountered a general demurrer by each defendant. From the orders sustaining the demurrers, plaintiff appeals.

Plaintiff's case, as made by the complaint, is in substance this: The Austin Poultry & Egg Company, Inc. had been engaged in business as a licensed wholesale dealer. Its license and bond expired May 31, 1935. Quoting from the complaint, the Austin company "on June 4, 1935, applied to the said commissioner [defendant Trovatten] for a renewal thereof." He "made an order requiring

[1]Reported in 274 N. W. 165.

it [the Austin company], as a condition before granting such license, to file a bond in the sum of $5,000 in conformity with the statute." (L. 1931, c. 394, 3 Mason Minn. St. 1936 Supp. §§ 6240-18½ to 6240-18½q). "Said bond has never been filed and said Austin Poultry & Egg Co., Inc. was not licensed to carry on the business of wholesale dealers after May 31, 1935."

Allegations follow that the Austin company continued business without license and held itself out as a licensed dealer; that while carrying on such unlicensed business defendant Trovatten "knew during all of said time" that it "was continuing to carry on a wholesale business as aforesaid" and that he "failed and neglected to take action to prevent said corporation continuing said unlawful business" and failed "to enforce the law or to exercise the authority vested in him" by statute.

Knowing that said Austin company were wholesale dealers, plaintiff had sold it poultry at various times. She knew that by law such wholesale dealers were required to be licensed and bonded and that the Austin company "had formerly been licensed and bonded" but "did not know that its license and bond had expired and that it was being allowed to continue its business without a license or a bond." Her damage arises from her sale in November, 1935, to the Austin company of turkeys of the value of $5,734.50, no part of which has been paid. There is an allegation also that the Austin company is "insolvent and unable to pay its debts."

The theory of the complaint is that by reason of the facts stated defendant Trovatten as commissioner of agriculture has been guilty of a breach of official duty of such nature that for the damage to plaintiff both he and his surety are liable. The latter's bond was furnished under 1 Mason Minn. St. 1927, § 6023, requiring it to be "conditioned for the faithful performance of his duties" by the commissioner.

It appears from the complaint that Mr. Trovatten refused to license the Austin company upon its failure to furnish the bond required. So the question is whether the commissioner of agriculture and his surety are liable to plaintiff for her loss in dealing

with the Austin company while, unlawfully, it continued business to the knowledge of the commissioner.

The wrongdoing of which plaintiff accuses the commissioner is one of omission rather than commission. So the liability, if any, is for nonfeasance. The violation charged is not of the precise official duty to exact a bond (L. 1931, c. 394, § 4), for it appears that the commissioner refused to license the Austin company without one. The nonfeasance, therefore, on which plaintiff's case must rest is the alleged failure of the commissioner to perform his general, executive duty to enforce the law against unlicensed "dealers at wholesale in produce." L. 1931, c. 394, §§ 3 and 17. Nothing of malicious or wilful character is averred against Mr. Trovatten.

By 1 Mason Minn. St. 1927, § 6025, the commissioner "is authorized, if upon investigation he is satisfied that the laws of the state * * * have been violated, to cause to be instituted in his own name as commissioner or in the name of the state, actions in the proper court, to secure punishment of the guilty party." By § 6026 the attorney general is required "to assign a deputy to act as advisor for the commissioner of agriculture, and to institute and maintain the actions herein provided for, when sufficient evidence is available to warrant the institution of such proceedings."

By L. 1931, c. 394, under which the Austin company had been licensed and which regulates such "dealers at wholesale," the commissioner of agriculture is charged, § 17, "with the enforcement of the provisions of this act * * *. Upon complaint made it shall be the duty of the county attorney to prosecute all cases arising in his county."

Thus it is clear that the duty generally to police dealers at wholesale, such as the Austin company, and to enforce the laws applicable to them, does not rest alone upon the commissioner of agriculture. Necessarily, particularly as to legal proceedings, all he can do is to invoke the aid of the state's legal department, either by reference to the attorney general or the proper county attorney. But we neither consider nor decide whether plaintiff is barred of relief by the rule of Foster v. Wagener, 129 Minn. 11, 13, 151 N. W. 407. The gist of that rule is that "mere neglect of official duty can-

not give rise to a cause of action where injury may or may not result, depending upon the conjectural and undeterminable action of some third person."

It is enough to compel decision against plaintiff that the commissioner of agriculture is not a ministerial officer and that the general duty, the violation of which is here charged against him, was not ministerial. The office itself is not ministerial because the commissioner, while having some ministerial duties, is required to exercise a large degree of discretion in the discharge of his general executive functions. See "ministerial office," 5 Words & Phrases (1st Ser.) 4526.

The duty in question is the general one to enforce the law concerning wholesole dealers in produce. L. 1931, c. 394, § 17. The time of, and manner for, the exercise of that duty, as well as choice of the agency of enforcement, are left to the uncontrolled discretion of the commissioner. A ministerial duty is one in which nothing is left to discretion (State v. Lindquist, 171 Minn. 334, 214 N. W. 260), a simple, definite duty arising under and because of stated conditions and imposed by law. The idea has been put in this language. "Official duty is ministerial when it is absolute, certain and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." People v. May, 251 Ill. 54, 57, 95 N. E. 999, Ann. Cas. 1912C, 510. To the same effect are Jewell Belting Co. v. Village of Bertha, 91 Minn. 9, 97 N. W. 424, and State v. Lindquist, 171 Minn. 334, 214 N. W. 260. See also "ministerial act" in Words & Phrases, First, Second, and Third Series. In Haynes v. Commonwealth, 104 Va. 854, 52 S. E. 358, it was held that policemen charged generally with the duty to prevent commission of crime and to enforce the law were not purely ministerial officers. That was because many of their duties were of a general and executive character involving the exercise of discretion.

A decisive test of plaintiff's case is this. Would she or any other individual have been entitled to a *mandamus* to compel the commissioner of agriculture to take any definite action against the Austin company while it was doing business without a license? Certainly not, because the generality of the language imposing on

the commissioner the duty of enforcing the law, to say nothing of its specific provisions concerning other officers and the law generally concerning their duties, is such as to leave to the commissioner a large discretion as to the manner in which, and the agencies by which, the law is to be enforced against offenders. *Mandamus* to compel the performance of official duty lies only where the officer proceeded against is under the plain and mandatory duty, imposed by law, to perform the very action wanted. If he has any discretion in the matter he will not be subjected to *mandamus*. State ex rel. Early v. Wunderlich, 144 Minn. 368, 175 N. W. 677; State ex rel. Security State Bank v. District Court, 150 Minn. 498, 185 N. W. 1019; State ex rel. Evens v. City of Duluth, 195 Minn. 563, 262 N. W. 681, 263 N. W. 912, 266 N. W. 736; State ex rel. Child v. City of Waseca, 195 Minn. 266, 262 N. W. 633.

In short, plaintiff's case fails because, as matter of law, the complaint excludes it from the only rule of liability which plaintiff can invoke. That rule is that liability of a public officer for nonfeasance attaches only "when the duty is ministerial, that is, when it is in obedience to the mandate of legal authority and the act is to be performed in a prescribed manner, without the exercise of the officer's judgment upon the propriety of the act, and the failure to perform is the proximate cause of the injury sustained." Stevens v. North States Motor, Inc. 161 Minn. 345, 348, 201 N. W. 435, 40 A. L. R. 36; 5 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 8001. In contrast is Howley v. Scott, 123 Minn. 159, 143 N. W. 257, 51 L.R.A.(N.S.) 137, where, on demurrer, a complaint was held to state a cause of action for official nonfeasance against a county auditor because the duty in question was purely ministerial and its performance "due" the plaintiff.

For the one reason stated, that the duty, violation of which is here charged, involved the exercise of executive discretion, and so was not ministerial, we hold that the complaint failed to state a cause of action. The rule of nonliability of public officers for such executive nonfeasance as that charged against Mr. Trovatten brings this case to a result deeply painful to plaintiff. But it is a fixed and definite rule of long standing which has been established in the

interest of the public service. Were it otherwise, were our state executive officers made liable therefor to every person who suffers damage from official nonfeasance, only persons without property and without ambition to acquire any would suffer themselves to become such officers.

Orders affirmed.