Jon Clifford JOHNSON, et al., Appellants,

v.

Ronald Bruce MORRIS, individually and a police officer in the Lakefield Police Department, et al., Respondents, Steven Van Hal, individually and as Deputy Sheriff in the County of Jackson, et al., Respondents,

State of Minnesota, Defendant.

No. C8–88–2614.

Court of Appeals of Minnesota.

Aug. 29, 1989.

Review Granted Oct. 19, 1989.

See also 374 N.W.2d 285 (reversing and remanding conviction for fleeing police officer in motor vehicle).

**564**

Andrew A. Willaert, Jr., John C. Hottinger, Hottinger Law Offices, Mankato, for appellants.

Kelton Gage, Blethen, Gage & Krause, Mankato, for Ronald Bruce Morris, et al.

Mark Samuel Ullery, Ruth Ann Webster, Gislason, Dosland, Hunter & Malecki, New Ulm, for Steven Van Hal, et al., for respondents.

Heard, considered and decided by WOZNIAK, C.J., and CRIPPEN and SHORT, JJ.

## OPINION

SHORT, Judge.

Jon Clifford Johnson appeals the trial court's decision granting summary judgment for respondents on civil claims brought under 42 U.S.C. § 1983 (1987) and under Minnesota common law. We affirm as to respondents Ronald Bruce Morris, Dennis Edmond Waldron, the City of Lakefield, the City of Heron Lake and Jackson County, but reverse as to respondent Steven Van Hal.

## FACTS

At approximately 1:00 a.m. on June 7, 1984, appellant left the field where he had been planting soybeans, and began driving home. Appellant was driving a pickup truck, and was pulling a gravity box loaded with seed and equipment. He drove north on Highway 86 through the City of Lakefield and passed a Cenex station located on the north side of town.

A few minutes before appellant drove by, three law enforcement officers had met at the Cenex station. Officers Morris and Waldron and Deputy Sheriff Van Hal, the three law enforcement officers at the station, are employed, respectively, by the City of Lakefield, the City of Heron Lake, and Jackson County. The officers testified that they could not see any reflective markers attached to the back of appellant's trailer, as required by Minnesota law. They also testified that they were aware of some grain thefts in the area. Morris decided to investigate the matter further, and began following appellant until appellant turned west onto a county road. Morris then turned on his red lights and siren, and appellant pulled his pickup and trailer over to the side of the road. Morris asked to see appellant's driver's license. Appellant testified that Morris used a "belligerent" tone of voice, and was standing very close to appellant when he demanded the license.

Appellant replied that he did not carry his license with him while working in the field, and did not intend to change his practice in that regard. Appellant claims that Morris responded, "Sassing an officer, that's a good reason for a ticket." Morris testified that appellant responded by using profane language, but appellant testified that he merely told Morris, "You know where to find me." Appellant claims that Morris knew who he was, and could issue him a ticket in the morning. Appellant testified that he was tired, and wanted to end the encounter so he could go home.

Appellant got back into his pickup, and began driving away. Morris got into his car and began following appellant, and eventually pulled alongside appellant with his red lights on, indicating that appellant should stop his vehicle. Appellant continued down the road, so Morris passed appellant in order to force him to stop. Appellant drove on, bumping the rear of Morris' squad car with the front end of his pickup. Appellant claims he lightly bumped the squad car, but photographs admitted into evidence show that the squad car was damaged by the contact.

Morris radioed for assistance, and Van Hal and Waldron joined in the chase. Waldron pulled his squad car behind appellant's vehicle, while Van Hal pulled up to the right side of the pickup. Appellant finally stopped at a place where the road narrowed so that he could not continue driving flanked by the squad cars.

Appellant testifies that he got out of his pickup, and then heard a gunshot. He saw that Van Hal had fired into his right front

tire. Van Hal then shot into the right rear tire. Van Hal testified that he shot into the tires while the vehicle was moving at approximately 30 miles per hour in order to stop appellant. Waldron then ordered appellant to put his hands against the side of his vehicle. Appellant testified that Van Hal ran around to the back of the trailer, aimed his gun at appellant's head, and shouted, "Get your hands on top of your head or I'll shoot you." Appellant allegedly replied, "Go ahead and shoot." However, appellant immediately complied with Van Hal's order, and testified that he feared his life was endangered. Van Hal handcuffed appellant. Appellant claims he felt a "sharp pain" when the handcuffs were applied. Appellant was given a Miranda warning, and placed into the back seat of Waldron's squad car.

Appellant claims that the handcuffs were painful, and that he asked Waldron three times to loosen them. Waldron allegedly said that he could not loosen the handcuffs, but that he would remove them upon arrival at the police station in Jackson. Appellant claims he continues to suffer intermittent pain as a result of the tight handcuffs, and that he can no longer weld.

Appellant brought an action under 42 U.S.C. §§ 1983 and 1985 (1987) and under various state tort laws against all three officers and their employers. The trial court granted summary judgment for the respondents on all claims. Johnson appeals the trial court's decision as to all claims except the one brought under 42 U.S.C. § 1985.

## ISSUES

I. Did the trial court properly grant summary judgment for the officers individually on claims brought under 42 U.S.C. § 1983?

II. Did the trial court properly grant summary judgment for the governmental entities on claims brought under 42 U.S.C. § 1983?

III. Did the trial court properly grant summary judgment for respondents on tort claims brought under Minnesota common law?

## ANALYSIS

Summary judgment is appropriate where the record shows that there is no genuine issue as to any material fact, and it is clear that the moving party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. All material facts and inferences are construed in favor of the nonmoving party. *Hauser v. Mealey,* 263 N.W.2d 803, 805, n. 1 (Minn.1978).

The application of the qualified immunity test is generally a question of law which may be resolved by summary judgment. *McIntire v. State,* 419 N.W.2d 799, 802 (Minn.Ct.App.1988), *pet. for rev. denied* (Minn. April 20, 1988). The scope of the qualified immunity doctrine is broad. As it has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law. *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). If the law allegedly violated is clearly established, the immunity defense ordinarily should fail, since reasonably competent public officials should know the law governing their conduct. *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982).

### I.

Government officials performing discretionary functions have qualified immunity shielding them from civil liability as long as their actions could reasonably have been thought to be lawful. *Anderson v. Creighton,* 483 U.S. 635, 637–639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Whether an officer protected by qualified immunity may be held personally liable for allegedly unlawful official action "turns on the 'objective legal reasonableness' of the action * * * assessed in light of the legal rules that were 'clearly established' at the time it was taken. * * * " *Id.* (quoting *Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738–39). Appellant argues that the trial court erred in granting summary judgment for the individual officers on his federal law claims because reasonable officers

would have known that the initial stop, arrest, and detention violated appellant's constitutional rights.

### A. The initial stop was not a clear violation of appellant's constitutional rights.

Appellant argues that Morris had no lawful basis to stop him, and that a reasonable officer would have known the stop was unlawful. We disagree. The only reflectors on appellant's vehicle were some pieces of reflector tape, which were covered with dirt and not clearly visible. Further, the fact that appellant may not have been in violation of the traffic laws does not in itself preclude a brief investigatory stop. *State v. Johnson*, 257 N.W.2d 308, 309 (Minn.1977). All that is required is that the stop not be the product of mere whim, caprice, or idle curiosity. *Johnson*, 257 N.W.2d at 309 (quoting *People v. Ingle*, 36 N.Y.2d 413, 420, 369 N.Y.S.2d 67, 74, 330 N.E.2d 39, 44 (1975)). Because Morris had a particularized and objective basis for suspecting a traffic violation or some other criminal activity, a reasonable officer could have concluded that the stop was valid under the state and federal constitutions. *See United States v. Cortez*, 449 U.S. 411, 418–19, 101 S.Ct. 690, 695–96, 66 L.Ed.2d 621 (1981); *Appelgate v. Commissioner of Public Safety*, 402 N.W.2d 106, 108 (Minn. 1987).

### B. A reasonable officer could have concluded that there was probable cause for the arrest.

Appellant also argues that a reasonable officer would have concluded that he lacked probable cause to arrest appellant. The arrest took place only after appellant drove away from Morris without identifying himself or producing his license. Minn. Stat. § 171.08 (1988) requires that a licensee have a license in possession when operating a motor vehicle, and that the licensee display it upon demand to a police officer. A violation of this requirement is a misdemeanor. Minn.Stat. § 171.241 (1988). A Minnesota statute in effect at the time Waldron stopped appellant required that a person charged with a misdemeanor violation be taken into custody if the person refused "to give a promise in writing to appear in court." Minn.Stat. § 169.91, subd. 1(7) (1984).[1] Also, Waldron might reasonably have concluded that appellant was guilty of fleeing a peace officer, a gross misdemeanor. Minn.Stat. § 609.487, subd. 2 (1988). By the time appellant was stopped, he had rammed his vehicle into the back of Waldron's car, and might have been charged with other crimes, including reckless driving and obstructing legal process. Because all of these potential violations occurred in the presence of the officers, they could reasonably conclude that they were authorized to make a warrantless arrest. Minn.Stat. § 629.34, subd. 1 (1984).

### C. There is a jury question as to whether Van Hal's use of force creates liability under 42 U.S.C. § 1983.

Appellant next argues that the trial court erred in concluding as a matter of law that the officers used reasonable force in making the arrest. An arrest based on probable cause may still be unconstitutional if the force used to accomplish the arrest is excessive. However, not every assault and battery by a police officer creates liability under 42 U.S.C. § 1983. *See New v. City of Minneapolis*, 792 F.2d 724, 726 (8th Cir.1986). Rather, the alleged intrusion must be clearly unreasonable[2]

---

1. In 1988 the Minnesota legislature deleted subd. 1(7) from Minn.Stat. § 169.91. 1988 Minn. Laws, ch. 681, § 9.

2. While the reasonableness test under the fourth amendment is not capable of precise definition and depends upon the facts of each case, relevant factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or at-

tempting to evade arrest by flight." *Graham v. Connor*, — U.S. —, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). The reasonableness of the force used must be judged from the perspective of a reasonable officer, and the officer's subjective intentions toward the suspect are not relevant. *Id.; see Scott v. United States*, 436 U.S. 128, 137–39, 98 S.Ct. 1717, 1723–24, 56 L.Ed.2d 168 (1978).

under the circumstances confronting the officer at the time the arrest is made. *See Graham v. Connor,* — U.S. —, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989).

■ Assuming that the facts alleged by appellant are true, we conclude that appellant has failed to create a jury issue as to whether Morris or Waldron used excessive force. Although the charges against appellant prior to his decision to flee the officers were misdemeanors, appellant's refusal to identify himself or to wait until Morris had completed his investigation justified Morris' decision to follow appellant in order to finish investigating possible violations of Minnesota traffic law. Once appellant refused to stop his vehicle, a reasonable police officer could have concluded that engaging in the chase was necessary to conclude the investigation. Furthermore, appellant himself escalated the conflict, and in doing so violated more serious provisions of the criminal code. Given appellant's behavior, it was also reasonable for the officers to handcuff him.

■ We are convinced, however, that appellant's version of the facts presents a jury question as to whether Van Hal's alleged conduct deprived appellant of his constitutional rights in violation of section 1983. Discharging a firearm in the direction of another person, or at a vehicle in which another person is believed to be, constitutes deadly force. Minn.Stat. § 609.066, subd. 1 (1988). Deadly force is authorized only when it is necessary:

(1) to protect the peace officer or another from apparent death or great bodily harm;

(2) to effect the arrest or capture, or prevent the escape, of a person whom the peace officer knows or has reasonable grounds to believe has committed or attempted to commit a felony involving the use or threatened use of deadly force; or

(3) to effect the arrest or capture, or prevent the escape, of a person whom the officer knows or has reasonable grounds to believe has committed or attempted to commit a felony if the officer reasonably believes that the person will cause death or great bodily harm if the person's apprehension is delayed.

Minn.Stat. § 609.066, subd. 2 (1988).

■ There is no evidence that Van Hal believed or had reason to believe that appellant was armed or in a position to cause his death or great bodily harm. On the contrary, all three officers were armed, and at least two of them had their guns drawn and pointed toward appellant as he climbed out of his vehicle. Further, appellant had not committed a felony [3] involving the threatened use of deadly force. Discharging a firearm at a suspected violent felon is authorized only if the officer reasonably believes he or she could not otherwise make the arrest. *Id.; see Schumann v. McGinn,* 307 Minn. 446, 468–69, 240 N.W.2d 525, 538 (1976). Arrest for a misdemeanor rarely, if ever, justifies the use of a firearm. *Schumann,* 307 Minn. at 469, 240 N.W.2d at 538, n. 18.

Van Hal argues that his observation of appellant's reckless driving gave him reasonable grounds to believe that appellant might cause great bodily harm to another driver were his capture delayed. However, appellant's testimony, presumed true for the purposes of a summary judgment motion, was that Van Hal fired the shots after appellant's vehicle was stopped and hemmed in by squad cars. At that point, appellant was no longer capable of endangering the officers or others with his driving.

■ Van Hal's act of pointing his gun at appellant's head and threatening to shoot him, while not an act of deadly force, nonetheless presents an additional jury issue as to whether appellant's constitutional rights were violated. To determine whether the force used to accomplish the arrest was reasonable, the extent of the force used must be balanced against the importance of the governmental interests justifying the intrusion. *Tennessee v. Garner,*

**3.** Fleeing a police officer is not a felony unless the person has previously been convicted of the same crime. Minn.Stat. § 609.487, subd. 3 (1988).

471 U.S. 1, 8, 105 S.Ct. 1694, 1699–1700, 85 L.Ed.2d 1 (1985). In other words, the extent of the force must be balanced against the force needed to accomplish the arrest. *See Dugan v. Brooks,* 818 F.2d 513, 516 (6th Cir.1987).

It is undisputed that at the time Van Hal aimed his gun at appellant and threatened to shoot him, appellant's tires had been shot out, and appellant was standing unarmed near his pickup surrounded by the armed officers. Appellant could not have inflicted harm upon Van Hal, and had no means to flee the officers. Under these circumstances, a jury could conclude it was not reasonable for Van Hal to threaten to kill appellant.

Furthermore, the law which Van Hal is alleged to have violated was clearly established at the time of the arrest. *See Anderson,* 483 U.S. at 637–42, 107 S.Ct. at 3038–40; *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. At the time Van Hal arrested appellant, the laws prescribing authorized use of deadly force had been codified for over five years. *See* 1978 Minn. Laws ch. 736, § 2; Minn.Stat. § 609.066 (1978). The rule that deadly force should not be used against a suspected misdemeanant dates back to English common law. *See Garner,* 471 U.S. at 12, 105 S.Ct. at 1701–1702. It is clear that deadly force may not be used against an unarmed suspect who poses no danger and is not able to flee the arresting officer. *See* Minn.Stat. § 609.066; *Patzner v. Burkett,* 779 F.2d 1363, 1368–69 (8th Cir.1985) (officers used excessive force and unlawfully made warrantless arrest where suspect posed no danger to the public safety and no exigent circumstances justified officers' conduct). The jury therefore could conclude that Van Hal is liable under the facts alleged by appellant. Summary judgment was inappropriate on this issue.

**D. There is no evidence of a conspiracy.**

 Appellant also alleges that the three police officers engaged in a conspiracy against him which resulted in an unlawful stop and arrest. However, appellant failed to present any evidence of a conspiracy. An officer's qualified immunity for conduct which is constitutional absent improper motives is not defeated by appellant's mere allegations of an improper state of mind. *Myers v. Morris,* 810 F.2d 1437, 1453 (8th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987). Although a jury issue remains as to the reasonableness of Van Hal's conduct, there is no evidence that this alleged conduct was the product of a conspiracy.

## II.

Because we conclude that Waldron and Morris acted lawfully in stopping, pursuing and arresting appellant, the cities of Lakefield and Heron Lake were properly dismissed from the lawsuit. The remaining question is whether the trial court properly granted summary judgment in favor of Jackson County.

The United States Supreme Court has held that for a county to be liable under 42 U.S.C. § 1983, a plaintiff must show that the alleged unconstitutional action was taken pursuant to a county policy or well established and sanctioned custom. *Monell v. Department of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978); *see also Patzner,* 779 F.2d at 1367. Further, the "official policy" must be the "moving force" behind the violation. *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–2038. Appellant argues that Jackson County is liable because (a) it failed to instruct or train Van Hal as to the proper use of force, and (b) it failed to properly investigate this incident and a previous incident in which Van Hal shot and injured another suspect. We disagree.

**A. There was no failure to train.**

 For inadequacy of police training to subject a county to liability under 42 U.S.C. § 1983, the failure to train must amount to "deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris,* —— U.S. ——, ——, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). In this case, there is no evidence that Van Hal's training was deficient, or that any alleged

deficiency in his training was either "the moving force" behind the alleged constitutional violation or a reflection of Jackson County's "deliberate indifference" to the public safety. To the contrary, the evidence shows that the various policy manuals and instructions Van Hal had received from the Jackson County Sheriff's Department properly instructed on when to initiate and abandon a high-speed chase, and when to draw and use firearms. Further, the Jackson County Sheriff testified that shooting out the tires of a vehicle after it had stopped and threatening to shoot a suspected misdemeanant are not consistent with department policy or with good police practice.

### B. There was no failure to investigate.

■ Similarly, there is no evidence that Jackson County's investigatory procedures demonstrated a deliberate indifference to the public safety. Cf. *Grandstaff v. City of Borger, Texas*, 767 F.2d 161, 171 (5th Cir.1985), *cert. denied*, 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987). Immediately after the incident occurred, the sheriff discussed the incident with Van Hal, and instructed him to submit a full report to the Minnesota Crime Bureau. Further, there is no evidence that Van Hal acted improperly during any earlier incident. Under these circumstances, the County's investigation of this incident does not reflect a "deliberate indifference to the public safety."

Because appellant failed to present any evidence that Jackson County's policies were unconstitutional, that its training procedures reflected a deliberate indifference to public safety or that a County policy was the moving force behind Van Hal's alleged constitutional violation, the trial court properly granted summary judgment for the County.

### III.

■ Qualified immunity of public officials for purposes of a section 1983 action does not automatically confer immunity from state law claims. *Elwood v. County of Rice*, 423 N.W.2d 671, 677 (Minn.1988). Minnesota's official immunity doctrine provides that "a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless [the official] is guilty of a willful or malicious wrong." *Elwood*, 423 N.W.2d at 677 (quoting *Susla v. State*, 311 Minn. 166, 175, 247 N.W.2d 907, 912 (1976)). As a general matter, police officers exercising their official duties are classified as "discretionary" rather than "ministerial" officers, and are thus afforded immunity in executing those discretionary duties. *Elwood*, 423 N.W.2d at 678 (quoting *Cook v. Trovatten*, 200 Minn. 221, 224, 274 N.W. 165, 167 (1937)).

■ Because Waldron and Morris had a legal basis to stop, pursue, arrest and restrain appellant, and because they did not use excessive force or otherwise violate appellant's constitutional rights in doing so, the trial court properly concluded that they are immune from state tort liability. We find that the decision to handcuff appellant, even if not essential to effectuating the arrest, was not unreasonable under the circumstances and certainly did not constitute willfully malicious conduct.

■ We disagree with the trial court, however, that Van Hal is immune from liability under Minnesota law. The Jackson County Sheriff, testifying on behalf of respondents, admitted during cross-examination that Van Hal's alleged actions were not consistent with good police practice. At the time the alleged shooting and threat occurred, appellant was stopped, obviously unarmed, and surrounded by the officers. Van Hal's position was different than the position of the officers in *Elwood*, who were entering a building in which they reasonably expected to encounter an armed and dangerous person. Recognizing the wide degree of discretion afforded to officers attempting to perform their duties and ensure the public safety, we nonetheless conclude that Van Hal is not immune from the state tort claims brought by appellant.[4]

---

4. While appellant alleges that all respondents engaged in unlawful conduct in violation of

Viewing the evidence in the light most favorable to appellant's position, a reasonable jury could find that Van Hal acted maliciously and in bad faith when he threatened to shoot appellant, and when he shot his gun toward appellant. We therefore reverse the trial court's ruling that Van Hal is immune from civil liability, and remand this case for further proceedings.

## DECISION

An officer who uses deadly force and threatens deadly force against a suspect who poses no immediate danger to the officer or another may be personally liable under 42 U.S.C. § 1983 and under state tort law. We affirm the trial court's decision granting summary judgment for Morris and Waldron and for the county and municipalities, but reverse as to the federal and state tort claims brought against Van Hal.

Affirmed in part, reversed in part, and remanded.

Minnesota law, he does not advance any theory of municipal or county liability under Minn. Stat. §§ 466.01–466.15 (1988). Appellant therefore has failed to state a cause of action against Jackson County under Minnesota law.