Michael McDONOUGH, Respondent,

v.

The CITY OF ROSEMOUNT, et al., Defendants (CX–92–2442), Appellants (CO–92–2448),

E.B. McMenomy, only in his individual capacity, Appellant (CX–92–2442), Defendant (CO–92–2448).

Nos. CX–92–2442, CO–92–2448.

Court of Appeals of Minnesota.

July 13, 1993.

Review Denied Sept. 10, 1993.

David E. Albright, Bloomington, for Michael McDonough.

Kent G. Harbison, Mary E. Hanton, Fredrikson & Byron, P.A., Minneapolis, for City of Rosemount, et al.

Richard T. Ostlund, Ansis V. Viksnins, Lindquist & Vennum, Minneapolis, for E.B. McMenomy.

Considered and decided by NORTON, P.J., and SCHUMACHER and PETERSON, JJ.

## OPINION

NORTON, Judge.

Respondent Michael McDonough brought a lawsuit which arose out of his unsuccessful attempt to sell land to the City of Rosemount. The defendants are the City of Rosemount, E.B. McMenomy, individually, and Stephan Jilk, individually. The city, McMenomy and Jilk moved for summary judgment. The court limited recovery in the breach of contract claim to specific performance, granted summary judgment for the city on an issue not appealed, and denied summary judgment on the remaining counts. The city, Jilk, and McMenomy appeal, claiming they are entitled to summary judgment based upon immunity and other grounds. This court consolidated the appeals. We affirm in part and reverse in part.

## FACTS

Respondent Michael McDonough is the owner of a 10–acre parcel of land in Rosemount, which he unsuccessfully attempted to sell to the city. He operates a builders supply company on the land. Appellant Stephan Jilk is the city administrator of Rosemount. Appellant E.B. McMenomy was elected mayor of the city in November 1991, and took office on January 7, 1992; the claims against him concern only the time period during which he was mayor-elect.

Discussions regarding the sale began in the late 1980s. The proposed acquisition came before the Rosemount City Council on December 17, 1991. According to the minutes of the meeting, Jilk presented to the council the contract for deed, loan agreement, and lease agreement. The purchase price was $316,000, and the lease agreement provided that McDonough would lease back the land for $750 per month for up to three years. The council agreed that a reciprocal termination clause should be included in the lease agreement. Then–Mayor Napper moved to approve the purchase and lease back agreements. Four council members voted in favor of the motion, and one opposed it.

The only term in dispute was the lease termination clause. The city wanted the lease to require each party to give identical notice prior to terminating the lease, while McDonough wanted the city to give him more notice than he was required to give to terminate the lease. McDonough asserts that he did agree to an equal lease termination provision at some point. He contends that McMenomy and Jilk conspired to avoid executing the documents until after the January 7, 1992 council meeting when McMenomy, who opposed the deal, took office. McDonough also asserted Jilk misrepresented to him that there were no problems with the deal, although he knew McMenomy allegedly planned to stop it.

McMenomy asserts that no contract was ever completed, that he acted properly in opposing the deal, and that in any event he was immune from suit. Jilk and the city contend they are immune from suit, and also raise other defenses.

On December 23, 1991, Jilk sent McDonough a letter indicating that because McDonough wanted an unequal lease termination provision, which differed from the

direction given by the city council, Jilk would bring the matter before the council again on January 7, 1992.

On January 7, 1992, McMenomy was sworn in as mayor, and another new council member was present. At the January 7 city council meeting, Jilk advised the council that McDonough had informed the city attorney that a 90–day reciprocal lease termination agreement was acceptable, and Jilk presented the revised lease agreement. McMenomy questioned the need for the purchase, and expressed his concern about the purchase price and the amount of the monthly rental payment. McMenomy moved that final consideration be given to the purchase at the January 21, 1992 council meeting, and the motion passed by a 3–2 vote.

On January 21, the matter was again brought before the council. Council members felt the city did not need the property at the time, and by a 3–2 vote, decided not to purchase the property.

Shortly thereafter, McDonough brought an action based on the city's failure to purchase the land. McDonough brought a breach of contract claim against the city. After the city moved for summary judgment, the court limited damages on the breach of contract claim to specific performance, but otherwise denied relief.

McDonough also sued McMenomy individually, alleging tortious interference with contractual relationships and with prospective contractual relationships and civil conspiracy, and asking for punitive damages. The claims were limited to the time prior to January 7, 1992, when McMenomy was mayor-elect. The trial court denied McMenomy's motion for summary judgment.

McDonough also asserted claims against Jilk individually for tortious interference with contractual relationships and with prospective contractual relations, civil conspiracy and misrepresentation, and requested punitive damages. Jilk's motion for summary judgment was denied.

The city and Jilk, who are represented by the same counsel, brought an appeal from the trial court order denying summary judgment. McMenomy also appealed from the trial court order denying summary judgment. This court consolidated the appeals. We reverse in part and affirm in part.

## ISSUES

I. Is the city entitled to summary judgment on the breach of contract claim based upon immunity?

II. Is Jilk entitled to summary judgment on the tort claims based upon official immunity?

III. Is McMenomy entitled to summary judgment on the tortious interference claim based upon immunity?

## ANALYSIS

A party may bring an immediate appeal from a trial court's denial of a motion for summary judgment based upon a claim of immunity. *McGovern v. City of Minneapolis*, 475 N.W.2d 71, 73 (Minn. 1991). An order denying summary judgment is otherwise generally not appealable, and interlocutory review is not appropriate on issues which do not involve immunity from suit. *Masonick v. J.P. Homes, Inc.*, 494 N.W.2d 910, 913 (Minn.App.1993). Therefore, while we address the immunity claims raised herein, we decline to address the other arguments appellants raise challenging the denial of summary judgment.

Under Minn.R.Civ.P. 56.03, a trial court is required to grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." *See Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). The moving party has the burden of proof, and inferences must be resolved against that party. *Nord v. Herreid*, 305 N.W.2d 337, 339 (Minn.1981).

The issue of whether a party is entitled to immunity often requires resolution of a legal question. *See Snyder v.*

*City of Minneapolis,* 441 N.W.2d 781, 786 (Minn.1989). This court need not defer to a trial court's decision on a legal issue. *See Frost–Benco Electric Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

## I.

 The city claims that it is entitled to immunity on McDonough's breach of contract claim. Respondent McDonough does not address this argument. The city contends in its reply brief that McDonough has therefore dropped the breach of contract claim against the city. However, failure of a respondent to file a brief does not result in a default decision in favor of the appellant; instead, the decision must be made on the merits. Minn.R.Civ.App.P. 142.03. Likewise, if a respondent fails to address an issue, it will be decided on the merits.

The city argues that because the January 21, 1992 resolution in which the city rejected the contract was the embodiment of a legislative function, it is absolutely immune from the breach of contract claim. *See Brown v. Crawford County,* 960 F.2d 1002, 1011 (11th Cir.1992) (commissioners entitled to absolute legislative immunity for enacting resolution). However, McDonough's claim is based upon an allegation that the city breached a contract which it had entered into.

 "A municipality must perform its valid contracts the same as an individual or private corporation." 10A Eugene McQuillan, *The Law of Municipal Corporations* § 29.119 (3d ed. rev. vol. 1990); *see Ketterer v. Independent Sch. Dist. No. 1,* 248 Minn. 212, 221, 79 N.W.2d 428, 435 (1956) (where city enters into contract of business nature, common principles of law applicable to private persons apply). If a municipality has revoked its contract, the other party may sue for breach. 10A McQuillan, *supra,* § 29.120. When a council authorizes the purchase of land, and the purchase is made pursuant to such authority, a subsequent council may not repudiate the contract, regardless of a change of membership. *Id.* Generally, sovereign immunity does not apply to contractual obligations. *Id.* § 29.123. Therefore, the city may not assert immunity against McDonough's claim that it breached its contract to acquire the land.

## II.

 Jilk argues he is entitled to summary judgment based on official immunity for McDonough's claims against him individually of misrepresentation, tortious interference with contract and proposed business relations, and conspiracy. A public official who is sued individually for his or her own torts may be subject to liability, unless entitled to protection under the common law doctrine of official immunity. *Rico v. State,* 472 N.W.2d 100, 106 n. 4 (Minn.1991). This doctrine provides "a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong." *Susla v. State,* 311 Minn. 166, 175, 247 N.W.2d 907, 912 (1976), *quoted in Pletan v. Gaines,* 494 N.W.2d 38, 40 (Minn.1992). The purpose of the immunity is "to insure that the threat of potential personal liability does not unduly inhibit the exercise of discretion required of public officials in the discharge of their duties." *Holmquist v. State,* 425 N.W.2d 230, 233 n. 1 (Minn.1988).

 McDonough argues official immunity does not apply because Jilk is not a statutory officer. *See* Minn.Stat. §§ 412.-02, .021 (1990). There is no requirement that the official entitled to immunity be a statutory officer. *See, e.g., Pletan,* 494 N.W.2d at 41 (police officers' decision to engage in vehicular pursuit of fleeing suspects protected by official immunity).

 In determining whether official immunity applies, courts have examined whether the employees' duties were ministerial or discretionary. *See Elwood v. County of Rice,* 423 N.W.2d 671, 677 (Minn.1988). An official's duty is ministerial "when it is absolute, certain and imperative, involving merely the execution of a specific duty arising from fixed and desig-

nated facts." *Cook v. Trovatten,* 200 Minn. 221, 224, 274 N.W. 165, 167 (1937). Some degree of judgment or discretion will not necessarily confer immunity on the official; instead, the crucial focus is on the nature of the act. *Elwood,* 423 N.W.2d at 677.

 Jilk attempted to negotiate the termination of lease provision, and decided to place the issue on the January 7, 1992 city council meeting because he felt it was unresolved. These are not ministerial acts like deciding how to teach a gymnastic exercise. *See Larson v. Independent Sch. Dist. No. 314, Braham,* 289 N.W.2d 112, 120–21 (Minn.1979). Instead, the nature of the acts required Jilk to exercise his judgment and discretion, entitling him to immunity. *See Pletan,* 494 N.W.2d at 41.

McDonough argues that official immunity does not protect an official who commits a willful or malicious wrong. *Rico,* 472 N.W.2d at 107.

> The exception does not impose liability merely because an official *intentionally* commits an act that a court or a jury subsequently determines is a wrong. Instead, the exception anticipates liability only when an official intentionally commits an act that he or she has reason to believe is prohibited.

*Id.* (emphasis in original). McDonough claims Jilk undermined express orders from the city council, conspired with McMenomy to stop the deal, and made misrepresentations to him, constituting willful and malicious acts in violation of his known right.

 Parties may not rely upon "mere allegations of malice" but must present specific facts evidencing bad faith. *Reuter v. City of New Hope,* 449 N.W.2d 745, 751 (Minn.App.1990), *pet. for rev. denied* (Minn. Feb. 28, 1990). Whether an official act is malicious or willful is usually a question of fact for the jury. *Johnson v. Morris,* 453 N.W.2d 31, 42 (Minn.1990). However, viewing the facts in the light most favorable to McDonough's position, there is no showing Jilk intentionally committed an act prohibited by clearly established law or regulation. *See Rico,* 472

N.W.2d at 107. Jilk is entitled to summary judgment on McDonough's claims against him based upon official immunity.

## III.

 McMenomy argues he is entitled to immunity from McDonough's suit. McMenomy first asserts that he is entitled to official immunity for the tortious interference claim. *See Midway Manor Convalescent & Nursing Home v. Adcock,* 386 N.W.2d 782, 788 (Minn.App.1986) (applying discretionary tort immunity under Minn. Stat. § 466.03, subd. 6 to claim of tortious interference with business relations). At the time of the challenged actions, McMenomy was not yet a government official, but instead was mayor-elect. McMenomy notes that the policy underlying the doctrine is to encourage decision-making that focuses on public good rather than the risks of personal liability. *See Holmquist,* 425 N.W.2d at 233 n. 1. He argues it should apply to elected officials prior to assuming office. We do not have authority to extend official immunity to one who is not yet a government official.

McMenomy cites the proposition that corporate officers are privileged to interfere with another's contract when they act in good faith. *See Nordling v. Northern States Power Co.,* 478 N.W.2d 498, 507 (Minn.1991). He urges this court to apply corporate officer immunity to the officers of a municipal corporation. *See Madonna v. Giacobbe,* 190 Ill.App.3d 859, 138 Ill.Dec. 90, 96, 546 N.E.2d 1145, 1151 (1989). We again decline to consider this when McMenomy was not a municipal officer at the time the challenged actions occurred.

 Finally, McMenomy asserts that he is entitled to immunity as a taxpayer and citizen who challenges proposed agreements of governmental units which may not be in the public interest. *See Middlesex Concrete Prods. & Excavating Corp. v. Carteret Industrial Ass'n,* 37 N.J. 507, 181 A.2d 774, 780–81 (1962). We acknowledge that a defendant in a tort action may avoid liability by showing his actions were justified by a lawful objective.

*Langeland v. Farmers State Bank of Tri-mont,* 319 N.W.2d 26, 32 (Minn.1982); *Schumacher v. Ihrke,* 469 N.W.2d 329, 332 (Minn.App.1991). The justification or privilege is lost if bad motive is present. *Nordling,* 478 N.W.2d at 506. While McMenomy may be able to assert this privilege as legal justification for his opposition under Minnesota law, this is a fact question not appropriate for summary judgment.

## DECISION

We reverse the trial court decision to deny summary judgment to Jilk, but affirm denial of summary judgment as to the city and McMenomy.

**Affirmed in part and reversed in part.**