Susan DAVIS, Appellant,

v.

**HENNEPIN COUNTY, et al., Respondents.**

No. C7–96–1841.

Court of Appeals of Minnesota.

Feb. 11, 1997.

statutory immunity is not available as a defense to Minnesota Human Rights Act claims and the district court erred in its analysis of the official immunity doctrine, we reverse and remand for trial.

## FACTS

Susan Davis has been employed by Hennepin County as a psychiatric social worker at the Hennepin County Home School since 1989. The Home School is a residential treatment center for juvenile offenders. Juveniles at the Home School live in buildings called cottages, and Davis, for the period relevant to this appeal, was assigned to cottage # 7.

Meredith Kakach was employed by Hennepin County at the Home School from 1980 until she resigned in 1994. During the period relevant to this appeal she worked as a juvenile correctional officer and, like Davis, was assigned to cottage # 7.

In 1991 Davis purchased a new home and told co-workers that she was looking for renters. Kakach expressed interest in renting from Davis and in approximately June 1991 moved into Davis's home as a tenant. In the fall Davis became dissatisfied with the living arrangement and requested that Kakach move out, which Kakach did in December 1991.

Joni M. Thome, Legal & Security Services, Minneapolis, for Appellant.

Michael O. Freeman, Hennepin County Attorney, Beverly J. Wolfe, Assistant County Attorney, Minneapolis, for Respondents.

Considered and decided by NORTON, P.J., and HUSPENI and FOLEY, JJ.

## OPINION

DANIEL F. FOLEY, Judge.*

A government employee appeals from an order dismissing her sexual harassment discrimination claims based on statutory and official immunity. Because we conclude that

Davis alleges that Kakach engaged in harassing behavior during and following the period that Kakach rented from her. Specifically, she charges that Kakach cleaned up after her, bought her presents, made comments to her about personal issues, talked to other people about her personal life, suggested to others that they had a romantic relationship, and called her to engage in social activities. Davis had had conversations with Kakach's work supervisor about Kakach's behavior during this period, but first made a formal complaint in April 1992.

After Davis's April 1992 complaint, Home School managers met with Kakach who agreed to desist from the offensive behaviors.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const.

art. VI, § 10.

In March 1993 Davis made a second formal complaint to management about Kakach's allegedly harassing behavior. Davis complained that Kakach had told a sexually offensive joke and continued to talk about Davis to other co-workers. Davis also alleged in the spring of 1993 that Kakach inappropriately touched her and stared at her while giving her keys. In response to the second complaint, Home School officials issued an order instructing Kakach to have no contact with Davis. In addition, Kakach was given a letter of reprimand for telling the inappropriate joke. In May 1993 Davis requested a transfer to a different cottage, but her request was denied.

In January 1994 Davis again made a formal complaint about Kakach's allegedly harassing behavior. In response to this complaint Home School officials required Kakach to undergo a mental-fitness-for-duty examination. Kakach was placed on leave in March 1994 until her examination was completed. On March 16, 1994, Davis filed this suit. On March 22, 1994, Home School managers, after learning that Kakach had passed her examination, suspended her for one week. During that week-long suspension Kakach voluntarily resigned.

Davis's original complaint in this action included claims for: (1) discrimination based on gender and sexual harassment; (2) discrimination based on sexual orientation; (3) intentional and negligent infliction of emotional distress; (4) aiding and abetting; (5) reprisal and retaliation; (6) assault and battery; (7) negligent training, supervision and retention; and (8) defamation. The complaint named the Home School, Kakach, Terry Wise (Home School superintendent), and Bill Joyce (assistant superintendent) as defendants. After stipulated agreements and orders for partial summary judgment, the only remaining defendant is the Home School and the only remaining claims are: (1) discrimination based on sexual harassment, Minn.Stat. § 363.03, subd. 1(2)(c) (1996); (2) aiding and abetting, Minn.Stat. § 363.03, subd. 6 (1996); (3) reprisal and retaliation, Minn.Stat. § 363.03, subd. 7 (1996); and (4) negligent training, supervision, and retention. The district court dismissed these claims as barred by both statutory and official immunity. Davis now appeals the ruling as it applies to her claims brought under the Minnesota Human Rights Act (MHRA).

## ISSUES

I. Is statutory immunity available as a defense to claims brought under the MHRA?

II. Did the district court err in dismissing Davis's MHRA claims on the basis of official immunity?

## ANALYSIS

In an appeal from summary judgment, we determine (1) whether there are any genuine issues of material fact, and (2) whether the lower court erred in applying the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990). Whether an immunity defense applies is a question of law, *Elwood v. County of Rice*, 423 N.W.2d 671, 675 (Minn.1988), which we consider without deference to the decision of the district court. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

### I.

■ Statutory immunity refers to the limited immunity enjoyed by the state and municipalities after the legislature waived the government's sovereign immunity to tort suits. *See* 1963 Minn. Laws ch. 798, § 2 (eliminating immunity of municipalities); 1976 Minn. Laws ch. 331, § 33 (eliminating immunity of state); *see also Janklow v. Minnesota Bd. of Examiners for Nursing Home Adm'rs*, 552 N.W.2d 711, 715 (Minn. 1996). The type of statutory immunity involved in this appeal is sometimes referred to as "discretionary immunity" and applies to a loss caused by the "performance or failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn.Stat. § 466.03, subd. 6 (1996). Statutory immunity is absolute; if it applies to a given set of circumstances it absolutely bars suit and liability notwithstanding the nature of the events underlying a claim.

■ The rationale for statutory immunity rests in the separation of powers. Its intent is to prevent courts from second-

guessing " 'policy-making activities that are legislative or executive in nature.' " *Watson v. Metropolitan Transit Comm'n*, 553 N.W.2d 406, 412 (Minn.1996) (quoting *Nusbaum v. Blue Earth County*, 422 N.W.2d 713, 718 (Minn.1988)). The Minnesota Supreme Court has distinguished between "planning level" activity and "operational level" activity in an attempt to clarify which decisions are discretionary and which are not for purposes of statutory immunity. *Id.* The court has indicated that the " 'crucial question * * * is whether the conduct involves the balancing of public policy considerations in the formulation of policy.' " *Id.* at 413 (quoting *Holmquist v. State*, 425 N.W.2d 230, 234 (Minn. 1988)). A planning level decision is one that involves " 'questions of public policy, that is, the evaluation of factors such as the financial, political, economic, and social effects of a given plan or policy.' " *Id.* (quoting *Holmquist*, 425 N.W.2d at 232).

Statutory immunity is not available as a defense to all claims, however. The legislature may expressly or impliedly waive the operation of statutory immunity by enacting other legislation. *See Janklow*, 552 N.W.2d at 717–18 (determining that legislature waived statutory immunity for whistleblower claims). Statutory immunity is impliedly waived if it is irreconcilable with a more specific provision in the law or with a law that was enacted after the immunity provisions were enacted. Minn.Stat. § 645.26, subds. 1, 4 (1996); *see also Janklow*, 552 N.W.2d at 717.

Minnesota appellate courts have not yet analyzed whether statutory immunity is available as against claims brought under the Minnesota Human Rights Act (MHRA).[1] But the Minnesota Supreme Court recently undertook this analysis with respect to the Whistleblower Act and concluded that statutory immunity was not available to claims brought under that Act. *Janklow*, 552 N.W.2d at 718.[2] For the same reasons expressed in *Janklow*, we believe that the government's statutory immunity is impliedly waived by the MHRA.[3]

Like the Whistleblower Act, the MHRA was enacted to protect the general public, but through enforcement of an individual's right to be free from discrimination in employment, public accommodations, housing, and public services. *See generally* Minn. Stat. § 363.03; *cf. Janklow*, 552 N.W.2d at 717 ("The Whistleblower Act was enacted to protect the general public, * * * but through the medium of shielding from retaliation employees who 'blow the whistle.' "). The purpose of the MHRA remains unchanged when the government, rather than a private entity, is the provider of employment, housing, accommodation or services. Indeed, a distinction between the rights of people discriminated against by government versus those subject to discrimination in the private sector itself offends "the broad prohibition against arbitrary classifications embodied in the Human Rights Act * * *." *Kraft, Inc. v. State by Wilson*, 284 N.W.2d 386, 388 (Minn.1979).

1. We have withdrawn our decision in *Carter v. Peace Officers Standards & Training Bd.*, 547 N.W.2d 431 (Minn.App.1996) which commented on these issues and substituted it for *Carter v. Peace Officers Standards and Training Bd.*, 558 N.W.2d 267 (Minn.App.1997) following remand from the Minnesota Supreme Court after it released *Janklow*.

2. In *Janklow*, the *state* asserted immunity under Minn.Stat. § 3.736, subd. 3(b) (1994). Here, a *county* asserts immunity under Minn.Stat. § 466.03, subd. 6 (1996). The grant of discretionary immunity to the state and its political subdivisions, while codified in different sections of the statutes, is substantially similar. *Compare* Minn.Stat. § 3.736, subd. 3(b) (the state is not liable for "a loss caused by the performance or failure to perform a discretionary duty, whether or not the discretion is abused") *with* Minn.Stat.

§ 466.03, subd. 6 (municipalities are immune from "[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused"). The reasoning of *Janklow* is therefore equally forceful whether applied to state or municipal statutory immunity.

3. The MHRA contains no express waiver of immunity protections. But the implication of the language in the Act supports our conclusion that the Legislature did not intend statutory immunity to bar MHRA claims against government entities. *See, e.g.,* Minn.Stat. §§ 363.03, subd. 4 (1996) (prohibiting public service discrimination); 363.06, subd. 4(1)(d) (requiring priority to claims when government is respondent); 363.071, subd. 2 (1996) (limiting punitive damages against members of governing bodies).

In *State by Beaulieu v. City of Mounds View*, 518 N.W.2d 567 (Minn.1994), the supreme court recognized that the defense of immunity poses a significant threat to the "essential remedial purpose" of the MHRA, which is to "eradicate discrimination." *Id.* at 570. But the court held that *official* immunity may nonetheless be asserted in defense of a MHRA claim. This is because *official* immunity does not protect willful or malicious acts and therefore evaporates when the plaintiff proves that the discriminatory acts were willful or malicious. *Id.* And the evidence necessary to show malice is so similar to that needed to show discrimination, that the practical effect of the application of the official immunity doctrine to MHRA claims "will be at most negligible." *Id.* Thus, the doctrine of *official* immunity was saved from irreconcilability with the MHRA because of a safety valve "which strips the potential immunity from those who act maliciously or intentionally." *Janklow*, 552 N.W.2d at 718.

No such safety valve operates to protect plaintiffs from the assertion of *statutory* immunity. As the court concluded in *Janklow*, "this is a critical distinction between the two types of immunity and * * * this distinction compels an outcome different [from] *Beaulieu*." *Id.* If public entities are allowed to discriminate in malicious and willful ways without threat of suit or liability for their illegal practices, the purpose of the MHRA will be significantly frustrated. The two provisions cannot be reconciled. *Cf. id.* (reaching same conclusion with respect to Whistleblower Act). Accordingly, we hold that statutory immunity may not be asserted to bar a claim arising under the Minnesota Human Rights Act.

## II.

■■■ Official immunity is a common law remnant of sovereign immunity. It operates to protect individuals who may be subject to liability due to their work or engagement on behalf of the government.[4] *See Janklow*, 552 N.W.2d at 715. The purpose of official immunity is "intended to protect public officials 'from the fear of personal liability that might deter independent action.'" *Id.* (quoting *Elwood v. County of Rice*, 423 N.W.2d at 678). As a result, government officials have broad discretion to conduct business and make decisions with the protection of official immunity. *Id.* at 716. Official immunity, unlike statutory immunity, even protects some types of decisions that are made on an "operational" level. *Watson*, 553 N.W.2d at 414. "Ministerial duties," however, do not involve the type of discretion covered by official immunity. *Id.* Thus, a broader scope of activities is covered by official immunity than by statutory immunity.

■■■ Official immunity and statutory immunity differ in one additional, very significant respect: official immunity will not protect an individual official who commits a malicious or willful wrong. *Beaulieu*, 518 N.W.2d at 570. A determination of the applicability of official immunity therefore requires a two-step inquiry: first, whether the alleged discriminatory acts of the officials are the type of conduct covered by official immunity; and second, whether the alleged discriminatory acts, even though of the type covered by official immunity, were malicious or willful and therefore stripped of the immunity's protection.

■■■ It is elementary that the conduct Davis complains of falls within the scope of official acts presumptively covered by official immunity. When an employer is put on notice of sexual harassment, the employer must take timely and appropriate remedial action.

---

4. Official immunity is applicable only to *individuals*. Where no individual official is responsible for the acts alleged to be negligent or violative of a duty, official immunity will not apply. *See Janklow*, 552 N.W.2d at 716 (because board acts in joint capacity when deciding to hire or fire executive director, no individual official is responsible and official immunity is inapplicable). But a government entity may, under certain circumstances, be able to invoke the protection of official immunity through the doctrine of vicari-

ous official immunity. *See Pletan v. Gaines*, 494 N.W.2d 38, 42–43 (Minn.1992); *Ireland v. Crow's Nest Yachts, Inc.*, 552 N.W.2d 269, 272 (Minn. App.1996), *review denied* (Minn. Sept. 20, 1996). Because the parties did not dispute the application of the doctrine to these facts (Davis's counsel conceded its applicability at oral argument), we assume for purposes of our analysis that official immunity is vicariously available to Hennepin County, the only remaining defendant in this action.

Minn.Stat. § 363.01, subd. 41(3) (1996); *Continental Can Co., Inc. v. State by Wilson,* 297 N.W.2d 241, 249–50 (Minn.1980). The determination of what response is appropriate clearly involves the judgment and discretion of the official making the determination. *See McNabb v. Cub Foods,* 352 N.W.2d 378, 384 (Minn.1984) (response options include disseminating anti-harassment policy, transferring employees, or taking disciplinary action). Official immunity is available to all official conduct not involving mere "ministerial acts." *Watson,* 553 N.W.2d at 414. "An official's duty is ministerial when it is 'absolute, certain and imperative, involving merely execution of a specific duty arising from fixed and designated facts." *Id.* (quoting *Cook v. Trovatten,* 200 Minn. 221, 224, 274 N.W. 165, 167 (1937)). The decisions made in response to Davis's complaints were plainly not "absolute, certain and imperative," and they are therefore the type of decisions that would normally enjoy the protection of the official immunity.

A more difficult question is presented by the issue of malice or willfulness. In the context of official immunity, malice " 'means nothing more than the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right.' " *Rico v. State,* 472 N.W.2d 100, 107 (Minn.1991) (citations omitted). As the supreme court further clarified in *Beaulieu,* this standard "contemplates less of a subjective inquiry into malice, which was traditionally favored at common law, and more of an objective inquiry into the legal reasonableness of an official's actions." *Beaulieu,* 518 N.W.2d at 571. An official's actions are legally unreasonable if the official commits those acts while having reason to believe they are prohibited. *See Id.* at 571–72 (citing *Rico,* 472 N.W.2d at 107–08).

Davis's claims under the MHRA require a virtually identical showing. Her claims survive only through proof of willful conduct on the part of the defendant. Sexual harassment requires a showing that "the employer *knows or should know* of the existence of the harassment and fails to take timely and appropriate action." Minn.Stat. § 363.01, subd. 41 (1996) (emphasis added). Aiding and abetting under the MHRA is established by a showing that the defendant "*[i]ntentionally* * * * aid[ed], abet[ted], incite[d], compel[led], or coerce[d] a person to engage in any of the practices forbidden by [the act]." Minn.Stat. § 363.03, subd. 6(1) (emphasis added). A reprisal claim is sustained only if the defendant has "*intentionally* engage[d] in any reprisal against any person" in violation of the act. Minn.Stat. § 363.03, subd. 7 (emphasis added).

The same evidence necessary to prove discrimination also satisfies the evidentiary requirement for demonstrating willful or malicious conduct for purposes of official immunity. Both require a finding that the defendant acted intentionally, and the inquiry for each focuses on the objective reasonableness of the defendant's actions. *See Beaulieu,* 518 N.W.2d at 571 (making same comparison with respect to discrimination in public services, Minn.Stat. § 363.03, subd. 4 (1990)). As a result, the evidence sufficient to sustain a claim under these sections of the MHRA is equally sufficient to bar the application of official immunity based on the malice exception. *See id.,* 518 N.W.2d at 572, n. 8.

The district court denied an earlier motion by Hennepin County for summary judgment on Davis's sexual harassment, aiding and abetting, and reprisal claims. In rejecting the motion, the district court found specifically that "there remain serious and material disputes of fact as to the nature of the harassment * * * [and that] there is evidence that the defendants knew that Kakach continued to engage in offensive conduct after the [Home School] supervisors intervened." Further, the court found that "there are facts in dispute that would support Plaintiff's claim of reprisal and retaliation." And finally, the court noted that the evidence presented "puts into dispute the intent of the defendants" with regard to the aiding and abetting claim. Our review of the record supports the district court's findings.

We believe that when, as here, the elements required to sustain an underlying claim are substantially similar to those required for proof of malice or willfulness in the context of official immunity and the plaintiff has successfully overcome a motion for

summary judgment on those underlying claims, the doctrine of official immunity cannot operate to bar suit or liability. *See Rehn v. Fischley,* 557 N.W.2d 328 (Minn.1996) (determination of whether an immunity applies is matter of law best resolved at summary judgment). To grant official immunity at this juncture would deny Davis her right to proceed on a claim which the district court has already determined mandates a jury trial. The court erred in dismissing the suit based on official immunity because, if the jury determines Davis's claims are meritorious, it impliedly determines that the officials acted with malice or willfulness and that they therefore may not invoke the protection of official immunity.

### DECISION

Because statutory immunity is not available as a defense to claims brought under the Minnesota Human Rights Act and because the district court erred in its analysis of the official immunity doctrine, we reverse and remand for trial.

**Reversed and remanded.**